OPINION OF THE COURT
Memorandum.
Ordered that the judgment of conviction is affirmed.
*6 The People charged defendant with, among other things, harassment in the second degree (Penal Law § 240.26 [1]). Prior to trial, defendant moved to dismiss the harassment charge, or, in the alternative, for sanctions, based on the People’s failure to produce Brady material, namely a videotape taken by a surveillance camera alleged to have recorded the incident. At a hearing on the motion (see People v Geaslen, 54 NY2d 510, 517 [1981]; see also People v Williams, 7 NY3d 15, 20 [2006]), the People’s witness, Thomas Dugan, “Chief of State University Police and Director of Public Safety” at the State University of New York Downstate Medical Center, testified that, pursuant to the surveillance system operating procedures employed at the time of the incident, the videotapes were routinely reused every 30 days. Chief Dugan did not review the tape before it was erased, nor, to his knowledge, had anyone else. The Criminal Court ruled that there was no indication of prosecutorial bad faith as to the People’s failure to obtain the tape within 30 days of the incident, and, because there was no proof that any portion of the incident had been recorded, it could not be determined whether the tape constituted unproduced Brady material. The court declined to grant defendant’s motion to dismiss and deferred decision on what sanction to impose, if any, until the trial testimony had been completed.
At the nonjury trial, Chief Dugan testified that all employees are informed that they must exhibit identification at all times while in Downstate and that signs are posted at all entrances to the effect that all persons must exhibit hospital identification or obtain a visitor’s pass. When he encountered defendant at an elevator entrance inside the hospital, Chief Dugan observed that defendant wore no identification and that defendant’s appearance matched a description of a person believed to be stealing patients’ property. Chief Dugan asked defendant to identify himself. Defendant responded, “Who the f[ ] are you?” whereupon Chief Dugan produced his identification and repeated his request for defendant’s identification. Defendant responded by “flashing” an expired Downstate identification card and attempted to enter an elevator by walking past Chief Dugan. Chief Dugan blocked defendant’s path, placed a hand on defendant’s arm, and asked defendant to accompany him to the police station down the hall to confirm defendant’s identity as an employee. Defendant withdrew his arm, and there ensued an exchange of pushes and shoves that ended less than two minutes later with the arrival of other officers.
*7 At the conclusion of the trial, the Criminal Court granted defendant’s motion to the extent of charging itself with an adverse inference based on the People’s failure to obtain, preserve, and produce the videotape. The court subsequently convicted defendant of harassment in the second degree.
On appeal, defendant argues that the charge of harassment in the second degree should have been dismissed upon the People’s undisputed failure to obtain and produce the videotape which, defendant argues, is Brady material; that the witness’s testimony that defendant’s appearance matched that of the person believed to be a thief unduly prejudiced the defense; and that, in light of the adverse inference charge, the verdict was against the weight of the evidence. We disagree and affirm.
In our view, the People’s failure to produce the videotape violated neither defendant’s constitutional nor his statutory discovery rights. “To be deemed Brady material, the [evidence] must be exculpatory and within the possession, custody, or control of the prosecution” (People v Hearns, 33 AD3d 722, 722 [2006]). Inasmuch as Chief Dugan is a police officer (see CPL 1.20 [34] [s] [the term “police officer” includes a “university police officer appointed by the state university”]), he is, therefore, a “public servant who represents the people in a criminal action” (CPL 1.20 [31]). The People are “charged . . . with knowledge of exculpatory information in the possession of the local police, notwithstanding the trial prosecutor’s own lack of knowledge” (People v Santorelli, 95 NY2d 412, 421 [2000]) and, thus, the relevant question is whether the content of the videotape can be considered exculpatory. Here, there was no testimony sufficient to establish what part, if any, of the altercation was recorded on videotape. Chief Dugan’s testimony did not establish that the incident was actually recorded, and “it would be speculative to claim that the missing videotape would have been exculpatory and required to be disclosed under the doctrine of Brady” (People v Ross, 282 AD2d 929, 931 [2001]; see also People v Handy, 83 AD3d 1454, 1455 [2011] [same]; People v Scattareggia, 152 AD2d 679, 679-680 [1989] [“(t)he police do not have a duty to preserve all material that might be of conceivable evidentiary significance . . . especially when the exculpatory value of the evidence is purely speculative”]; People v Brock, 246 AD2d 406, 406 [1998] [dismissal not required “since there was no showing of bad faith or that the videotape . . . would have been beneficial to defendant”]). In any event, the court applied a sanction, an adverse inference charge, for *8 the People’s failure to produce the videotape, a sanction which, under the circumstances presented, sufficed to prevent any prejudice to defendant (e.g. People v Alvarez, 54 AD3d 612, 613 [2008]; People v Diaz, 47 AD3d 500 [2008]).
Further, we find that Chief Dugan’s testimony concerning his belief that defendant matched the description of a person believed to be committing thefts from Downstate patients was admissible to establish the context of Chief Dugan’s approach to defendant (see People v Rasako, 78 AD3d 498 [2010]). In any event, even if we were to reach a contrary conclusion, based on the facts and circumstances of the case, we find little likelihood of prejudice. “[A] court sitting as the trier of fact is presumed to have considered only the competent evidence in reaching its verdict ‘despite awareness of facts which cannot properly be relied upon in making the decision’ ” (People v Maduro, 27 Misc 3d 127[A], 2010 NY Slip Op 50577[U], *1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2010], quoting People v Moreno, 70 NY2d 403, 406 [1987]; see also People v Tong Khuu, 293 AD2d 424, 425 [2002]). Accordingly, there was no significant probability that the error, if any, contributed to defendant’s conviction (see People v Crimmins, 36 NY2d 230, 241-242 [1975]; People v Smith, 77 AD3d 980, 982 [2010]).
Defendant further contends that the determination that there was sufficient evidence of defendant’s intent to harass was against the weight of the evidence. “[T]he appropriate standard for evaluating a weight of the evidence argument on appeal is the same regardless of whether the finder of fact was a judge or a jury” (People v Lane, 7 NY3d 888, 890 [2006]) and such an evaluation requires a determination of whether it would have been reasonable for the factfinder to have reached a different verdict, and if so, whether, after a weighing of the probative value of conflicting testimony and the relative strength of conflicting inferences drawn therefrom, the trier of fact accorded the proper weight to the evidence (see People v Romero, 7 NY3d 633, 643-644 [2006]; see also People v Mateo, 2 NY3d 383, 409-410 [2004]; People v Bleakley, 69 NY2d 490, 495 [1987]). In this review, an appellate court must accord great deference to the factfinder’s opportunity to view the witnesses, hear their testimony, observe their demeanor and assess their credibility (see People v Lane, 7 NY3d at 890; People v Mateo, 2 NY3d at 410).
Here, “the evidence is of such weight and credibility as to convince us that the [Criminal Court] was justified in finding *9 defendant guilty beyond a reasonable doubt” (People v Cahill, 2 NY3d 14, 58 [2003]). The Criminal Court was not required to afford any weight to the adverse inference based on the nonproduction of the videotape. Although mere physical contact does not establish an intent to commit the offense (see e.g. People v Caulkins, 82 AD3d 1506, 1507 [2011]; People v Traber, 35 Misc 3d 149[A], 2012 NY Slip Op 51117[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]; People v Ramos, 3 Misc 3d 127[A], 2004 NY Slip Op 50324[U] [App Term, 1st Dept 2004]), intent may be inferred from conduct and the surrounding circumstances, including the nature of the physical encounter (People v Rodriguez, 17 NY3d 486, 489 [2011]; People v Bracey, 41 NY2d 296, 301 [1977]; People v Daniels, 10 Misc 3d 137[A], 2005 NY Slip Op 52137[U], *1 [App Term, 2d Dept, 2d & 11th Jud Dists 2005] [“the . . . injury sustained by the complainant was the natural consequence of defendant’s act . . . and his intent can be inferred from the act itself’]). Defendant’s intent is revealed by defendant’s obscene response to the officer’s initial query, defendant’s refusal to exhibit identification in a fashion whereby it could properly be examined by a person he knew had initiated a proper demand therefor, his attempting to evade the officer’s authority and to enter the elevator, his refusal to peacefully accompany the officer to the office where his identity as an employee could have been verified, and his refusal unilaterally to end the physical encounter. Instead, defendant persisted in pushing and shoving the officer for a period militating against any reasonable inference of spontaneity.
Accordingly, the judgment of conviction is affirmed.
Weston, J.E, Rios and Solomon, JJ., concur.