OPINION OF THE COURT
Memorandum.
Ordered that the judgments of conviction are affirmed.
Insofar as it is relevant to this appeal, the People charged defendant, in separate informations, with criminal contempt in the second degree (Penal Law § 215.50 [3]) and criminal mischief in the fourth degree (Penal Law § 145.00). The first information alleged that, on December 24, 2007 “at approximately 10:20 p.m.,” in violation of an order of protection which had been served earlier in the day on behalf of John Kennedy, his spouse Paula McCallum, and others, defendant drove to their residence, walked onto their front yard, and hurled a hammer in the direction of their bay window, missing the window but causing at least $250 in damage to the window frame.
At a nonjury trial, Elizabeth Kennedy, defendant’s estranged spouse and business partner for more than 20 years, testified *81 that she witnessed the entire incident from inside the home and recognized defendant as the person throwing the hammer. The hammer, bearing a tag of Christmas greetings to was later discovered on the ground near the window. Mr. Kennedy and Ms. McCallum, respectively Elizabeth Kennedy’s brother and sister-in-law, testified that, prior to the incident, they had installed a videotape surveillance system following acts of vandalism to their property, and that they had reviewed the videotape footage of the incident and recognized defendant therein. Ms. McCallum testified that she had copied to a DVD the videotape footage that depicted the incident and several minutes of footage of the scene recorded before and after the incident, wherein nothing of significance occurred, and gave the DVD to an investigating officer. The original videotapes were subsequently overwritten by the surveillance system in accordance with its normal operation. Defendant objected to the admission into evidence of a copy of the DVD on the grounds that the footage was too indistinct to permit an identification of the person committing the offenses and that he was prejudiced by the loss of the uncopied portions of the original videotapes which, he contended, might well have contained exculpatory matter.
The defense presented several expert witnesses who stated, variously, that the videotapes had been “faked” to implicate defendant and tampered with in the form of the deletion of a number of frames; that, on physiognomic grounds, the person in the videotapes could not have been defendant; and that the damage to the window frame was not caused by a thrown hammer but by a hammer held in the hand. Other witnesses testified that defendant was at his own home and in the company of friends at 10:20 p.m. on December 24, 2007. At the close of the trial, the District Court denied defendant’s request for an adverse inference charge with respect to the missing portions of the videotapes, convicted defendant of criminal contempt in the second degree and criminal mischief in the fourth degree, and ordered $290 in restitution.
On appeal, defendant argues that the copy of the McCallum DVD should not have been admitted into evidence; that the District Court, in error, declined to consider an inference adverse to the People with respect to the lost portions of the videotapes; that the testimony of Elizabeth Kennedy was incredible as a matter of law; that the District Court could not have convicted defendant had it given the proper weight to the expert *82 testimony; and that, as a result, the verdicts were against the weight of the evidence. Defendant further contends that his rights to due process and a fair trial were violated by a 20-minute discrepancy between the pleadings and the trial proof as to when the offenses occurred, and by prosecutorial misconduct. In addition, defendant asserts that he was deprived of his statutory right to a hearing to establish a basis for the amount of restitution. For the reasons that follow, we find these contentions to be unpreserved or without merit, and affirm the convictions.
The determination to admit videotape evidence “generally rests . . . within a trial court’s founded discretion” (People v Patterson, 93 NY2d 80, 84 [1999]), the exercise of which will be disturbed only “when no legal foundation has been proffered[,] . . . when an abuse of discretion as a matter of law is demonstrated,” or when an intermediate court decides to “ exercise [ ] its exclusive and plenary interest of justice power” (id.; see e.g. People v Boyd, 97 AD3d 898, 899 [2012]). A videotape may be authenticated by a witness to the recorded events, testimony by the installer or maintainer of the equipment that the subject matter was accurately recorded, or chain of custody evidence establishing “acceptable inferences of reasonable accuracy and freedom from tampering” (Patterson, 93 NY2d at 84; see also Zegarelli v Hughes, 3 NY3d 64, 69 [2004]; People v Ely, 68 NY2d 520, 528 [1986]). Gaps in the recorded media may implicate the weight to be accorded the evidence, but not its admissibility, as long as the remaining portions are authenticated (People v Orlando, 61 AD3d 1001, 1002 [2009]; People v Gibbons, 18 AD3d 773, 773 [2005]; People v Apergis, 200 AD2d 388, 389 [1994]).
Although neither Mr. Kennedy nor Ms. McCallum testified to their understanding of the technical dimensions of the installation of the videotape surveillance system, they described the manner in which it was maintained and operated. Further, from inside the premises, Elizabeth Kennedy, having recognized the sound of defendant’s vehicle, witnessed the acts constituting the criminal mischief, namely defendant approaching the house, throwing something in the direction of the house, and departing at a run. After viewing the original videotapes and the portions copied from Ms. McCallum’s DVD onto the trial exhibit, Ms. Kennedy testified that those portions accurately depicted what she had personally observed. John Kennedy and Paula McCallum, who had known defendant for many years, testified that they had reviewed what had been recorded during *83 the evening of December 24, 2007 and recognized defendant as the perpetrator by his distinctive clothing, his idiosyncratic body movements, and his characteristic gait. Ms. McCallum stated that she had copied what she considered the relevant footage to a DVD and had given the DVD to an investigating police officer, that the contents of the People’s trial exhibit accurately reproduced the portions of the videotapes that she had reviewed and copied, and that the originals of the videotape recordings were overwritten within 48 hours in accordance with the surveillance system’s normal operation. This testimony sufficed to authenticate the videotape footage preserved in the trial exhibit (e.g. People v Patterson, 93 NY2d at 84; People v Roberts, 66 AD3d 1135, 1135-1136 [2009]). We note that the defense had every opportunity to submit the exhibit to expert analysis and to cross-examine John Kennedy and Paula McCallum as to what they had observed in the original footage, the accuracy of the portions preserved on the exhibit, and the integrity of the copy used as a trial exhibit (see e.g. People v Griffin, 98 AD3d 688, 689 [2012]; People v Boyd, 97 AD3d 898, 899 [2012]; People v Campola, 201 AD2d 290, 291 [1994]; People v Williams, 38 Misc 3d 4, 7 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]).
To establish a violation of Brady v Maryland (373 US 83 [1963]), “a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material” (People v Fuentes, 12 NY3d 259, 263 [2009]). The exculpatory evidence must have been “within the possession, custody, or control of the prosecution” at the time of the loss (People v Hearns, 33 AD3d 722, 722 [2006]). Defendant contends that, by virtue of Ms. McCallum’s preparation of the DVD after the arrival of the police who, being “public servant[s] who represent ] the people in a criminal action” (CPL 1.20 [31]; People v Williams, 38 Misc 3d 4 [2012]; see also CPL 1.20 [16]; [34] [b], [d]), were the prosecutor’s agents for purposes of the possession of evidence, the People were obligated to secure the entirety of what was recorded by all of the video cameras before and after the criminal incident. However, while the People may be charged with knowledge of exculpatory evidence in the possession of local police “notwithstanding the trial prosecutor’s own lack of knowledge” (People v Santorelli, 95 NY2d 412, 421 [2000]), and the entirety of the videotape footage was theoretically within the grasp of the police, who could have *84 acted to preserve it before the uncopied portions were overwritten, evidence produced by a private party is not normally considered to be under a prosecutor’s control (see People v Brooks, 57 AD3d 445 [2008]; People v Banks, 2 AD3d 226 [2003]). Ms. McCallum was not a public servant or the prosecution’s agent when she created her DVD; there is no indication that the police had any part in the filming, initial viewing, and editing of the videotapes, much less that they influenced Ms. McCallum’s choice of what to preserve; and it cannot be said that the DVD passed into the prosecution’s “possession or control” until she produced it to an investigating officer (People v Reedy, 70 NY2d 826, 827 [1987]; see e.g. People v Acosta, 74 AD3d 1213, 1214 [2010]).
Moreover, there is no requirement that the police “ ‘affirmatively gather evidence for the accused’ ” (People v Hayes, 17 NY3d 46, 51 [2011], quoting People v Alvarez, 70 NY2d 375, 381 [1987]) or “preserve all material that might be of conceivable evidentiary significance, especially when the exculpatory value of the evidence is purely speculative . . . [and] there [is] no showing of bad faith on the part of the People” (People v Taylor, 169 AD2d 791, 792 [1991]; see Arizona v Youngblood, 488 US 51, 58 [1988] [“(U)nless a criminal defendant can show bad faith on the part of the police, (the) failure to preserve potentially useful evidence does not constitute a denial of due process of law”]).
In any event, defendant has not provided any reason to suspect that the uncopied and overwritten portions of the videotapes were “reasonably likely to be material” (People v Handy, 20 NY3d 663, 669 [2013]), that is, that they “ ‘possessed] an exculpatory value evident before its destruction, loss, or failure to preserve’ ” (People v Lyons, 94 AD3d 1020, 1021 [2012], quoting People v Jardin, 88 NY2d 956, 958 [1996]). Consequently, it cannot be said that the failure to preserve and disclose the entirety of the surveillance footage “contributed to the verdict” (People v Vilardi, 76 NY2d 67, 77-78 [1990] [ordering a new trial because there was at least a reasonable possibility that had the exculpatory evidence been available to the defendant he would not have been convicted]).
Defendant invokes the expert testimony of a defense witness to the effect that the prosecution exhibit was “faked” and that certain frames were missing from the original videotape footage to support his claim that the videotape record admitted at the trial was the product of fraud and tampering, and should *85 have been precluded, whatever the significance of the loss of the uncopied portions. A review of the videotape evidence reveals that it contains several minutes of footage of the scene before and after the incident wherein nothing of significance occurs, and, with respect to the remaining portions, there is no indication that the contents had been fabricated or edited to incriminate defendant, or had been so damaged or subjected to tampering as to have fatally compromised the evidence’s probative value. While there are short gaps in the tapes, there is no basis for an inference that they represent frames which were deliberately excised, and no indication that, had the missing portions been restored, the restoration would have served any other purpose than to smooth out the visual narrative (see People v Boyd, 97 AD3d at 899 [“Although defendant takes issue with the lapse between the video’s frames, upon our independent review of the recording we find that these minor breaks do not invite undue speculation of the events depicted so as to preclude its admission into evidence”]; People v Jackson, 200 AD2d 856, 858 [1994] [tape admissible despite subsequent erasures because “the integrity of the portion . . . which contained the (offense) had not been compromised”]). Accordingly, no adverse inference charge was warranted and, even had the District Court adopted such a charge, it “was not required to afford any weight to the . . . inference based on the nonproduction of [portions of] the videotape” (People v Williams, 38 Misc 3d at 9). Given the strength of the People’s case independent of the videotape evidence, the District Court might well have discounted the videotape evidence and convicted defendant based on the eyewitness and circumstantial evidence. Thus, the refusal to adopt an adverse inference based on the unpreserved videotape footage, if error, was harmless (e.g. People v Bradley, 108 AD3d 1101, 1102 [2013]; see People v Crimmins, 36 NY2d 230, 237 [1975]; People v Blake, 105 AD3d 431 [2013]).
Defendant further argues that to convict him, the District Court must have “arbitrarily rejected] . . . the uncontradicted expert testimony” because, had the court accorded the expert testimony the weight to which it was entitled, it could not have concluded that his guilt had been proved beyond a reasonable doubt. We do not agree. It is a “long-standing general rule” that the admissibility and limits of expert testimony lie primarily in the sound exercise of a trial court’s discretion (People v Brown, 97 NY2d 500, 505 [2002]; see e.g. People v Abney, 13 NY3d 251, 266 [2009]; compare Beizer v Schwartz, 15 AD3d 433, 434 *86 [2005], with People v Herbin, 86 AD3d 446, 447 [2011]) and that, at a nonjury trial, it is for the court to determine whether the proffered expert testimony would assist it, as the finder of fact, to reach its verdict (People v Lee, 96 NY2d 157, 162 [2001]).
The expert testimony, insofar as it is at issue on the appeal, concerned defendant’s physiognomy and general heath, the utility of “body ratio analysis” to determine whether the person in the videotapes could have been defendant, and whether the damage to the window frame was caused by a thrown hammer. As noted, the People’s case included the testimony of persons who had known defendant for decades, who were familiar with defendant’s idiosyncratic clothing and behavior, and who insisted that they were certain that defendant was the person who had thrown the hammer (see e.g. People v Miller, 93 AD3d 882, 883 [2012]). Thus, it cannot be said that the District Court erred as a matter of law when it determined what weight to accord the expert testimony (see e.g. People v Jeselnik, 5 Misc 3d 131[A], 2004 NY Slip Op 51348[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2004]).
Defendant did not preserve for appellate review his claim that the testimony of Ms. Kennedy was incredible as a matter of law, having made no such argument to the trial court (see CPL 470.05 [2]; People v Carlucci, 80 AD3d 621, 622 [2011]; People v Florio, 40 Misc 3d 132[A], 2013 NY Slip Op 51137[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2013]).
In fulfilling our responsibility to conduct an independent review of the weight of the evidence (CPL 470.15 [5]; People v Danielson, 9 NY3d 342 [2007]), we must accord great deference to the factfinder’s opportunity to view the witnesses, hear their testimony, observe their demeanor and assess their credibility (see People v Mateo, 2 NY3d 383 [2004]; People v Bleakley, 69 NY2d 490 [1987]). Upon a review of the record, we find that the verdicts were not against the weight of the evidence (People v Romero, 7 NY3d 633 [2006]).
We have considered defendant’s remaining contentions and find them to be without merit (see People v Horne, 97 NY2d 404, 410 [2002]; People v Kim, 91 NY2d 407, 410-411 [1998]; People v Watt, 81 NY2d 772, 774 [1993]; People v Simmons, 106 AD3d 1115, 1116-1117 [2013]; People v Campany, 266 AD2d 833 [1999]).
Accordingly, the judgments of conviction are affirmed.
Nicolai, PJ., Iannacci and Maraño, JJ., concur.