*82
 
 OPINION OF THE COURT
 

 Bellacosa, J.
 

 Defendant contends that three evidentiary trial errors entitle him to a reversal of his robbery conviction and a new trial. The Appellate Division affirmed the judgment of conviction that was based on a jury verdict, and a Judge of this Court granted leave to appeal. We now reverse because, like the dissenting Justices at the Appellate Division, we conclude that the trial court should not have admitted the police officer’s testimony as to the grocer’s earlier lineup identification of defendant. The trial court ruling is not justified under CPL 60.25, and warrants a new trial, since identification was crucial to the fair resolution of this case.
 

 On March 2, 1993, three men entered a grocery store in Queens and committed a gunpoint robbery of the proprietor, John Cho, and several customers. Several weeks later Cho picked defendant Patterson out of a lineup, as one of the robbers. Before Patterson was brought to trial, Cho died in another unrelated robbery.
 

 At the trial, the People offered the testimony of a police officer who was present at Cho’s lineup identification. The People urged that, because of Cho’s unavailability as a witness at the trial, CPL 60.25 permitted the officer to testify as to Cho’s lineup identification of defendant. The testimony was allowed by the trial court, and the Appellate Division approved. We disagree that the statute may be construed and applied in this fashion.
 

 The authorization contained in CPL 60.25 is specific and limited. By its terms, CPL 60.25 does not allow, third-party testimony confirming a pretrial identification by a nontestifying witness. Instead, the statute expressly delineates preconditions and the particular instances for the admission of previous identification evidence, in the absence of trial-present identification.
 

 The witness who made the pretrial identification must have testified to: (1) observing the defendant “either at'the time and place of the commission of the offense or upon some other occasion relevant to the case;” (2) observing, under constitutionally permissible circumstances, “a person whom he recognized as the same person whom he had observed on the first or incriminating occasion;” and (3) being “unable at the proceeding to state, on the basis of present recollection, whether or not the defendant is the person in question” (CPL 60.25 [1] [a]; see,
 
 People v Gonzalez,
 
 46 NY2d 1011, 1012).
 

 
 *83
 
 In a novel, unprecedented extension of the explicit terms of the statute, the People argue that because victim Cho was dead at the time of Patterson’s trial, and therefore “unavailable,” the third prong was satisfied since Cho was unable to state, based on present recollection, whether defendant was the person he previously identified. However, the People misperceive the conjunctive nature of the statutory requirements and recast the literal words of that particular prong to try to hang this case on that exceptional statutory authorization.
 

 The People’s interpretative proffer is too facile and is defeated by the plain language of the enactment. The statute presupposes
 
 testimony from the identifying witness
 
 that establishes, along with the other enumerated requirements, a lack of present recollection of the defendant as the perpetrator
 
 (see,
 
 CPL 60.25 [1] [a] [iii];
 
 People v Quevas,
 
 81 NY2d 41, 45). That requirement is not met here. The testimony of a third person at trial (the police officer) — confirming the pretrial, unsworn lineup identification by the witness (Cho) — can be rendered admissible only after this prerequisite is supplied
 
 (see,
 
 CPL 60.25 [1] [b];
 
 People v Quevas, supra,
 
 at 45-46;
 
 People v Bayron,
 
 66 NY2d 77, 81;
 
 People v Gonzalez, supra).
 

 Indeed, the testimony of a third party non-identifying witness is allowed as evidence-in-chief under the statute only when coupled with the real identifying witness’s testimony as to the prior identification (CPL 60.25 [2]). It is through this coupling that the testimony of both “witnesses” forms a complementary, reliable chain of evidence, linking the acceptance of the prior identification
 
 (see, People v Nival,
 
 33 NY2d 391, 395-396,
 
 appeal dismissed, cert denied
 
 417 US 903). The testimony of the third party, who witnessed the previous identification but not the crime, standing alone, cannot provide the indispensable safeguards of affording the defendant the benefit of probing cross-examination and the defensive development of reasonable doubt about the identification. The admission of the police officer’s proxy-like testimony, giving the jury Cho’s lineup identification of Patterson, falls fatally short of the CPL 60.25 authorization. Since identification of defendant was crucial, this is reversible error here and requires a new trial.
 

 We address but do not rule on two additional evidentiary features since further proceedings must occur in this case. They relate to the admission of the store surveillance videotape purportedly showing the unfolding robbery, and a tape recording of a 911 telephone call from the victim reporting the crime.
 

 
 *84
 
 At the outset, we emphasize that relevant videotapes and technologically generated documentation are ordinarily admissible under standard evidentiary rubrics. Some reliable authentication and foundation (including technically acceptable self-authentication techniques) are, however, also still necessary.
 

 The decision to admit or exclude videotape evidence generally rests, to be sure, within a trial court’s founded discretion. Moreover, this type of ruling may be disturbed by this Court only when no legal foundation has been proffered or when an abuse of discretion as a matter of law is demonstrated (Prince, Richardson on Evidence § 4-214 [Farrell 11th ed]), and by the intermediate appellate court in the additional circumstance when it exercises its exclusive and plenary interest of justice power.
 

 Similar to a photograph, a videotape may be authenticated by the testimony of a witness to the recorded events or of an operator or installer or maintainer of the equipment that the videotape accurately represents the subject matter depicted
 
 (see, People v Byrnes,
 
 33 NY2d 343, 347-349). Testimony, expert or otherwise, may also establish that a videotape “truly and accurately represents what was before the camera”
 
 (id.,
 
 at 349). Evidence establishing the chain of custody of the videotape may additionally buttress its authenticity and integrity, and even allow for acceptable inferences of reasonable accuracy and freedom from tampering
 
 (cf., People v Ely,
 
 68 NY2d 520, 527-528). The availability of these recognized means of authentication should ordinarily allow for and promote the general, fair and proper use of new technologies, which can be pertinent truth-yielding forms of evidence. Correlatively, however, the obligation and need for responsible accuracy and careful reliability should not be sacrificed to some of the whims and weaknesses of fast moving and rapidly changing technology.
 

 These illustratively noted methods of authentication are not exclusive and they correspond with standards developed and utilized in other States
 
 (see, e.g., Fisher v State,
 
 7 Ark App 1, 643 SW2d 571 [1982];
 
 Toluer v State,
 
 269 Ga 530, 500 SE2d 563 [1998];
 
 State v Mewborn,
 
 131 NC App 495, 507 SE2d 906 [1998];
 
 Matter of the Welfare of S.A.M.,
 
 570 NW2d 162 [Minn App 1997]). The Federal courts
 
 (see, e.g., United States v Roach,
 
 28 F3d 729 [8th Cir 1994];
 
 United States v Clayton,
 
 643 F2d 1071 [5th Cir Unit B 1981]) and New York’s lower courts
 
 (see, e.g., Matter of Burack,
 
 201 AD2d 561;
 
 People v Scutt,
 
 254 AD2d 807,
 
 lv denied
 
 92 NY2d 1038;
 
 People v Fondal,
 
 154 AD2d 476,
 
 *85
 

 lv denied
 
 75 NY2d 770;
 
 People v Higgins,
 
 89 Misc 2d 913) also help point the way toward acceptable trends collected and analyzed in authoritative secondary sources
 
 (see, e.g.,
 
 3 Jones, Evidence § 17:52 [6th ed 1972]; 2 McCormick, Evidence § 214, at 17-18 [4th ed]; 3 Wigmore, Evidence, § 798a [1991 Supp]; Barker and Alexander, Evidence in New York State and Federal Courts § 1104.1 [d]; Mueller and Kirkpatrick, Modern Evidence § 9.14).
 

 Here, the People’s case on the trial record we are reviewing lacks authentication to justify the use of a stationary commercial store security camera and videotape. Although the People at retrial will have an opportunity to remedy the foundational vacuum and chain of custody linkage, the present state of the record provides an inadequate basis for admissibility.
 

 The People argue that the 911 tape may serve to authenticate the videotape. That call apparently recorded background sounds and an unidentified Asian man excitedly reporting a robbery at an address corresponding with Cho’s store on March 2, 1993. While reasonable inferential linkages can ordinarily supply foundational prerequisites, the tie-in effort in this case is too tenuous and amorphous. In any event, absent the tape itself or a transcript of it, we find it unnecessary to address or forecast a definitive assessment on this issue, as it may reemerge on a retrial or in further proceedings on this case.
 

 Standard protections and prerequisites for the introduction of relevant, reliable evidence must be observed, not excused by short cuts and shortfalls. In sum, the CPL 60.25 identification error necessitates a reversal and new trial in this case.
 

 Accordingly, the order of the Appellate Division should be reversed and the matter remitted for a new trial in accordance with this opinion.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order reversed and a new trial ordered.