OPINION OF THE COURT
Richard L. Buchter, J.
During the trial of an indictment alleging the crimes of sodomy, attempted rape, sexual abuse and endangering the welfare of a child, this court is presented with evidentiary issues of first impression regarding public policy and the requirements of authentication of a sexually explicit videotape allegedly used in the commission of the crimes.
The pertinent facts are as follows:
Between March 11 and 12, 2001, the defendant allegedly brought the nine-year-old complainant to his home where, the People contend, he showed her a sexually explicit interracial videotape. Thereafter, the defendant allegedly committed the crimes charged in the indictment. The following day, based upon the complaining witness’ outcry, which contained a specific description of portions of the tape, the police seized a sexually explicit interracial videotape from the V.C.R. in the defendant’s apartment. After viewing the tape, the officers confirmed that it contained distinctive material as described by the complaining witness.
As part of a motion in limine, the court must now decide whether and to what extent the videotape is admissible in evidence at trial, and if so, what foundation is required to authenticate it.
At the outset, it is well established that, “In assessing probative value, courts must pay close attention to the purpose for which such a film is offered and the fairness of the manner in which it seeks to achieve that end” (Barker and Alexander, Evidence in New York State and Federal Courts § 11:12).
Here, the court determines that the tape has relevance and probative value to support its admission as it both (1) corroborates the child’s account of the incident, and (2) is evidence *208 in support of the elements of the crime of endangering the welfare of a child, which a jury should be permitted to see and evaluate. However, in the absence of testimony that the child viewed the entire tape, only those portions of the tape which contain acts recounted by the child witness with particularity, as having been played during the crimes alleged, may be played to the jury. Playing the remaining portions of the tape without evidence that the victim had viewed them would be prejudicial to the defendant and invite improper speculation by the jury. Additionally, the court will charge the jury that the mere possession of a sexually explicit tape is not a crime.
A second aspect of the issues presented herein relates to the foundation required for admissibility of the tape, particularly with regard to authentication.
Ordinarily, to authenticate a tape of any kind (including a movie) a witness views it or hears it at a time when it is in police custody and thereafter identifies it, in substance, as being the same tape and in the same condition as it was at the time of the incident (People v Patterson, 93 NY2d 80).
The purpose of this testimony is to establish prima facie that the tape has not been altered and that it accurately reflects the actual events it portrays. However, in the present case, in view of the prurient character of the tape and the child’s age, to compel the child victim to again view the tape for the purpose of authenticating it would be damaging to the child, against public policy and constitute the crime of endangering the welfare of a child. (People v Morey, 224 AD2d 730, lv denied 87 NY2d 1022; People v Dunavin, 173 AD2d 1032, lv denied 78 NY2d 965.) Thus, the court would not permit the tape to be authenticated in that manner.
In determining the questions of authentication and admissibility of a tape, a court must also be cognizant of the purpose for which a tape is being offered. Under the facts of this case, the tape is being offered as physical evidence of the commission of the crime, (Fisch, New York Evidence § 140 [2d ed].)
Here, unlike in other more common situations where tapes are offered in evidence, it is only the general character or nature of the tape which is relevant. The tape is not being offered for the truthfulness or accuracy of its contents, or for the words being said on it or the images portrayed in it. Rather, the issue of whether the tape accurately reflects the underlying material it purports to depict does not arise in this case, in the same manner or to the same extent as it would in the case of a video-taped confession or a video which recorded the commission of the actual crime charged.
*209 As in the case of the recovery of a knife used during a robbery or duct tape used to restrain a victim in a kidnapping, the mere presence of the sexually explicit tape, described by the child victim and recovered from the V.C.R in the defendant’s apartment, serves as physical evidence of the commission of the crimes alleged. As such, its relevance and admissibility do not turn specifically upon proof of its accurate portrayal of events in question or upon the truthfulness of the contents expressed or the images portrayed.
Based upon the foregoing, the court holds that the victim’s testimony that the defendant placed the tape in the V.C.R and played it, and her description of its contents, taken with the officer’s testimony that he recovered the tape from the defendant’s V.C.R on the following day, and his testimony that it matched the victim’s description, is both a proper authentication and foundation for the admission of the tape, as similar testimony would be a proper foundation for the admission of burglar’s tools or other forms of physical evidence recovered from a crime scene. (See e.g., People v Pena, 50 NY2d 400; Ruloff v People, 45 NY 213; People v Miller, 17 NY2d 559.)
Based on the above foundation, the tape would be sufficiently connected to the defendant and to the commission of the crime and its authenticity sufficiently established so as to permit its admission. The degree of weight to be given to such evidence remains a question of fact for the jury.