■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY R. ROBERTS, Appellant. [887 NYS2d 326]—

Peters, J.P. Appeal from a judgment of the County Court of Saratoga County (Scarano, J.), rendered July 11, 2007, upon a verdict convicting defendant of the crimes of sodomy in the first degree (two counts) and sexual abuse in the first degree (three counts).

In June 2006, defendant's housemate discovered a videotape in defendant's room which depicted defendant performing oral sex on the victim, who appeared to be asleep or unconscious. The housemate then contacted the police and, following an investigation into the matter, defendant was indicted for, among other things, three counts of sodomy in the first degree, four counts of sexual abuse in the first degree and one count of attempted criminal sexual act in the first degree. Following a jury trial, defendant was convicted of two counts of sodomy in the first degree and three counts of sexual abuse in the first degree and sentenced to an aggregate term of 15 years in prison, to be followed by five years of postrelease supervision. He now appeals.

Defendant contends that County Court erred in admitting the videotape into evidence because the People failed to lay a proper foundation for its admission. We agree. Typically, a videotape is authenticated by the testimony of a participant or a witness to

the recorded events, such as the videographer, that the videotape is a complete and accurate representation of the subject matter depicted (*see People v Patterson*, 93 NY2d 80, 84 [1999]; *People v Ely*, 68 NY2d 520, 527 [1986]; *see also Zegarelli v Hughes*, 3 NY3d 64, 69 [2004]). Where no witness or participant is available to testify, a videotape may be authenticated by the testimony of an expert that it "truly and accurately represents what was before the camera" and has not been altered (*People v Byrnes*, 33 NY2d 343, 349 [1974]; *see People v Patterson*, 93 NY2d at 84; *People v Ely*, 68 NY2d at 527). "Evidence establishing the chain of custody of the videotape may additionally buttress its authenticity and integrity, and even allow for acceptable inferences of reasonable accuracy and freedom from tampering" (*People v Patterson*, 93 NY2d at 84; *cf. People v Ely*, 68 NY2d at 527-528). This chain of custody method of authentication requires, "in addition to evidence concerning the making of the [video]tape[ ] and identification of the [participants], that within reasonable limits those who have handled the [video]tape from its making to its production in court 'identify it and testify to its custody and unchanged condition' " (*People v Ely*, 68 NY2d at 528, quoting *People v Connelly*, 35 NY2d 171, 174 [1974]).

Here, the People's case was bereft of testimony, expert or otherwise, that the videotape fairly and accurately represented the events that actually transpired. Rather, the People relied on chain of custody evidence to lay a foundation for its admission, proffering the testimony of defendant's housemate who discovered the videotape in defendant's bedroom and a police officer who received the videotape from the housemate. Over defendant's strenuous objection that "[t]here's been no testimony that [the videotape] contains a fair and accurate representation of anything," County Court admitted the videotape into evidence.

In our view, the authenticity and accuracy of the videotape was not established by the chain of custody testimony. At the time the videotape was admitted into evidence, there was no testimony concerning the making of the videotape, where it was kept or who had access to it during the nearly three-year period from the time of its making to its discovery by defendant's housemate in 2006 (*see People v Patterson*, 242 AD2d 740, 741 [1997], *revd* 93 NY2d 80 [1999]; *People v Encarnacion*, 187 AD2d 1007, 1008 [1992], *lv denied* 81 NY2d 970 [1993]; *see also People*

*v Ely*, 68 NY2d at 528).* Indeed, "[b]ecause films are so easily altered, there is a very real danger that deceptive tapes, inadequately authenticated, could contaminate the trial process" (*DiMichel v South Buffalo Ry. Co.*, 80 NY2d 184, 196 [1992], *cert denied* 510 US 816 [1993]; *see Tai Tran v New Rochelle Hosp. Med. Ctr.*, 99 NY2d 383, 387 [2003]; *DiNardo v Koronowski*, 252 AD2d 69, 70 [1998], *lv denied* 688 NYS2d 372 [1999]; *cf. People v Ely*, 68 NY2d at 528 [noting the "ease" with which tapes may be altered "and the difficulty, except for an expert, in detecting such a change"]). Had the People provided some other foundational proof—such as expert testimony that the videotape fairly and accurately depicted what was before the camera and that an analysis of it revealed no indication of alterations—"the gap in the chain of custody would affect the weight but not the admissibility of the tape[ ]" (*People v Ely*, 68 NY2d at 528 [citation omitted]; *People v Davis*, 193 AD2d 885, 886 [1993], *lv denied* 82 NY2d 716 [1993]; *see People v Campbell*, 24 Misc 3d 82, 87 [2009]). Here, however, no such proof was offered. Therefore, because the evidence presented was insufficient to provide the required foundation for admission of the videotape, it was an abuse of discretion for County Court to admit it into evidence.

Nor can we say that the error in admitting the videotape into evidence was harmless. Insofar as the victim testified that he had no recollection of the events depicted on the videotape, its evidentiary value was significant. Under these circumstances, we cannot conclude that there was "no reasonable possibility that the erroneously admitted evidence contributed to the conviction" (*People v Hamlin*, 71 NY2d 750, 756 [1988]; *see People v Crimmins*, 36 NY2d 230, 237 [1975]; *compare People v Daniels*, 36 AD3d 502, 503 [2007], *lv denied* 9 NY3d 842 [2007]). Therefore, the judgment must be reversed and the matter remitted for a new trial (*see People v Joyner*, 240 AD2d 282, 287 [1997], *lv denied* 90 NY2d 906 [1997]), where the People will have an opportunity to remedy the foundational deficiencies present in this record (*see People v Patterson*, 93 NY2d at 85).

Briefly addressing defendant's remaining assertions, County Court did not err in declining to admit into evidence a Microsoft Word printout of an instant message allegedly between defendant and the victim on the ground that it lacked sufficient

---

* Defendant subsequently testified on his own behalf and affirmed the conduct depicted on the videotape, but claimed that it was consensual. Those admissions, presented long after the admission of the videotape, "do not satisfy the requirement that the fairness and accuracy of the entire [videotape] be established as a *predicate* of admissibility" (*People v Ely*, 68 NY2d at 528 [emphasis added]; *see People v McGee*, 49 NY2d 48, 60 [1979]).

authenticity and reliability (*see People v Givans*, 45 AD3d 1460, 1461-1462 [2007]; *compare People v Pierre*, 41 AD3d 289, 291-292 [2007], *lv denied* 9 NY3d 880 [2007]). To the extent that the existing record permits review, we reject defendant's additional claim that he was denied the effective assistance of counsel during the investigatory stage of the proceedings (*see People v Claudio*, 83 NY2d 76, 78 [1993]; *People v Reyes*, 270 AD2d 181, 182 [2000], *lv denied* 95 NY2d 907 [2000]).

Spain, Rose, Kane and Stein, JJ., concur. Ordered that the judgment is reversed, on the law and the facts, and matter remitted to the County Court of Saratoga County for a new trial.