Rivera, J.
(concurring). I agree with the majority that the People failed to authenticate the computer printout and its admission was reversible error, entitling defendant to a new trial (majority op at 474). The case presents a novel question as to how a party may authenticate a printout of a digital image found on a social media website.[1] However, the majority does not adopt a test to apply in determining that the foundational proof was insufficient. I write to clarify why the People’s authentication proof comes up short.
At defendant’s trial on two counts of armed robbery (Penal Law §§ 160.15 [4]; 160.10 [1]), the People sought to admit a printout of a digital image obtained on a website called “Black-Planet, com.” The People argued that the printout depicted defendant holding the gun used in the robbery. There is no dispute that the printout depicts a person holding a gun and money. The court admitted the evidence, concluding that a proper foundation had been laid after a detective identified defendant’s face in the top half of the printout, and the victim *481 identified the gun in the bottom half as a gun that “looks similar to the gun that took place in the robbery.” The Appellate Division affirmed the judgment, specifically rejecting defendant’s argument that the People failed to adequately authenticate the printout (People v Price, 127 AD3d 995, 996 [2d Dept 2015]).
Before this Court, defendant renews his authentication challenge. Defendant and the People propose different tests for authenticating social media evidence, each claiming their respective test best reflects the requirements of our prior case law and accounts for the risk of tampering associated with social media images. Although I do not adopt defendant’s proposed test, he is correct that the People’s proof was inadequate in this case.
The decision whether to admit or exclude evidence “may be disturbed by this Court only when no legal foundation has been proffered or when an abuse of discretion as a matter of law is demonstrated” (People v Patterson, 93 NY2d 80, 84 [1999]). “In determining whether a proper foundation has been laid for the introduction of real evidence, the accuracy of the object itself is the focus of inquiry” (People v McGee, 49 NY2d 48, 59 [1979]). “Accuracy or authenticity is established by proof that the offered evidence is genuine and that there has been no tampering with it” (id.).
We have long recognized that authentication is not subject to a one-size-fits all approach but, rather, the proof necessary to establish the reliability of the proposed evidence “may differ according to the nature of the evidence sought to be admitted” (id.). Authentication may be established by direct or circumstantial evidence, and “reasonable inferential linkages can ordinarily supply foundational prerequisites” so long as the “tie-in effort” is not “too tenuous and amorphous” (Patterson, 93 NY2d at 85). In other words, the party seeking to admit evidence may rely on a variety of proof, alone or in combination, to meet its burden of establishing the reliability of the evidence (see People v Ely, 68 NY2d 520, 527 [1986] [“The necessary foundation may be provided in a number of different ways”]). While certain types of proof by their nature may establish authentication for categories of evidence, previously “noted methods of authentication are not exclusive” (Patterson, 93 NY2d at 84). A court’s determination as to the sufficiency of proof in any particular case is a fact-specific enterprise, which turns on the purpose of the evidence sought to be admitted (see *482 e.g. People v Julian, 41 NY2d 340, 343 [1977] [“Proof of a complete chain of custody is one accepted technique for showing the authenticity of a fungible item of real evidence”]; People v Kinne, 71 NY2d 879, 880 [1988] [authentication certificate on a business record may “replace( ) the testimony of a live witness”]; People v Lynes, 49 NY2d 286, 293 [1980] [“substance of the conversation” may supply “criteria of reliability”]). Thus, our precedent establishes that the test for authentication is flexible and responds to the factual nuances of each case.
As with other evidentiary matters, when presented with a question of authentication, the trial court’s task is to determine whether the party offering the evidence has made a sufficient threshold showing of reliability so that the evidence may be submitted to the jury (see Lynes, 49 NY2d at 293 [a judge may leave it to the jury to decide whether the evidence implicates defendant or some other person]; People v Dunbar Contr. Co., 215 NY 416, 422-423 [1915] [trial judge did not err in allowing the jury to determine whether defendant was the speaker in a telephone conversation submitted as evidence]). It is for the jury then to determine the weight of the evidence and whether it implicates the defendant in the crime charged (Dunbar, 215 NY at 423 [“The question before the trial judge was whether he would exclude the conversation altogether, or receive it and allow the jury to say whether (defendant) was the speaker”]; Lynes, 49 NY2d at 293 [“(I)t cannot be said as a matter of law that the Trial Judge erred in leaving it to the jury — aided as it could be by the instruments of cross-examination, counsels’ arguments and other fact-finding tools available at the trial level — to decide whether . . . the speaker was sufficiently identified” (internal quotation marks omitted)]).
Given the general population’s mass consumption and use of social media, “[predictably, social media postings are becoming an important source of evidence” (Imwinkelried, Evidentiary Foundations § 4.02 [6] [9th ed 2014]; see also Hon. Paul W. Grimm, Authentication of Social Media Evidence, 36 Am J Trial Advoc 433 [2013]). Courts have recognized that this evidence presents unique challenges (see e.g. Lorraine v Markel Am. Ins. Co., 241 FRD 534, 537 [D Md 2007]; Tienda v State, 358 SW3d 633, 639 [Tex Grim App 2012]; Parker v State, 85 A3d 682, 685-686 [Del 2014]). As some commentators have noted, “social media is often stored on remote servers, is accessed through unique interfaces, can be dynamic and collaborative in nature, and is uniquely susceptible to alteration and fabrication” (H. Christopher Boehning & Daniel J. Toal, Authenticating Social *483 Media Evidence, NYLJ, Oct. 2, 2012 at 5 [2012]). Arguably, traditional approaches to authentication are inadequate because these new online platforms “can complicate the application of those traditional concepts, and we must be prepared to deal with these complications” (David I. Schoen, The Authentication of Social Media Postings, ABA Trial Evidence Committee [May 17, 2011], available at https:// apps.americanbar.org/litigation/committees/trialevidence/ articles/0517ll-authentication-social-media.html). On this appeal, we are squarely presented with the question of how our flexible authentication standard applies to social media images. Therefore, we have the opportunity to resolve an eviden-tiary issue of growing concern given the proliferation and ubiquitousness of social media.[2]
Here, the People sought to establish that the printout was a digital image from defendant’s web page. The majority concludes that the People failed to submit testimony that courts have previously found sufficient to authenticate a photograph: testimony from a forensic computer expert, the person who took the picture, or a third party who either was present at the time or who has personal knowledge about the accuracy of the image (majority op at 477-478). The majority does not decide whether the People may only rely on this type of proof, or whether other evidence would suffice. In response to the People’s proposed test for the authentication of social media evidence, the majority states that, “[a]ssuming without deciding that a photograph may be authenticated through the method proposed by the People, the evidence presented here . . . was exceedingly sparse,” and then concludes that “the authentication requirement cannot be satisfied solely by proof that defendant’s surname and picture appears on the profile page” (majority op at 478-479). This approach hints at, but does not confirm, the proof that would satisfy the People’s burden. However, we cannot know whether the printout of the digital image was authenticated without knowing how to measure the adequacy of the People’s proof (see Stop the Beach Re *484 nourishment, Inc. v Florida Dept. of Environmental Protection, 560 US 702, 716, 737 [2010] [rejecting the concurrence’s insistence that “this case does not require those questions to be addressed” because “(o)ne cannot know whether a takings claim is invalid without knowing what standard it has failed to meet”]).[3]
Turning to the merits, whether the People’s evidence was sufficient to authenticate the social media digital image depends on the purpose for which it was offered. The People argued that the printout was an accurate representation of an image from defendant’s web page, and that it depicted him with the gun used in the crime. Essentially, the People sought to establish the reliability of the image by connecting defendant to a web page that belonged to him.
The People’s proof had to first overcome two levels of authentication. Given the People’s purpose for seeking admission of the image, I would hold that the People had to establish that: (1) the printout was an accurate representation of the-web page; and (2) the page was defendant’s, meaning he had dominion and control over the page, allowing him to post on it. It is undisputed that the People proved, through the detective’s testimony, that the printout was an accurate representation of the digital image she viewed on the BlackPlanet.com website. Crucially, however, the People failed to establish that this was defendant’s web page, by direct or circumstantial evidence, or with proof establishing “reasonable inferential linkages [that] ordinarily supply foundational prerequisites” (.Patterson, 93 NY2d at 85). Like in Patterson, the “tie-in effort” between the testimony relied on by the People here, and the purpose for which the printout was submitted, was “too tenuous and amorphous” (id.). In other words, the People did not submit *485 proof by which a reasonable jury could conclude that the printout was an accurate representation of defendant’s profile page. Although the majority does not expressly adopt this requirement, I agree with my colleagues’ conclusion that “the authentication requirement cannot be satisfied solely by proof that defendant’s surname and picture appears on the profile page” (majority op at 479).
The People had knowledge of personal information posted on the web page which might have established the necessary link to defendant, but the People did not present that evidence as part of the proffer. Other evidence arguably addresses the authentication of the web page and the depiction therein, such as proof that the defendant posted or adopted the photograph, or knew of the photograph and allowed it to remain on the profile page without objection. However, given the deficiency of the proof actually submitted, I agree with the majority (majority op at 479 n 3), we need not consider whether proof that the web page belonged to defendant could also establish that the image depicted was genuine (McGee, 49 NY2d at 59).[4] In other words, since the People did not link defendant to the web page *486 where the image was found, there is no need to consider on this appeal what must be shown to satisfy McGee’s requirement that “there has been no tampering with” the proffered evidence (id.). That question is left for a future case.
This approach respects the role of the judge and jury. If the People satisfy their burden then the court may exercise its discretion to admit the evidence, assuming it otherwise meets the rules for admission (i.e., relevance, whether the probativeness of the evidence outweighs any potential unfair prejudice). Once the People have met these threshold requirements, that is, once a printout from a social media web page is authenticated, it is for the jurors to decide whether they find the evidence persuasive on an issue in the case (see Lynes, 49 NY2d at 293; Dunbar Contr. Co., 215 NY at 422-423; Evidence in New York State and Federal Courts § 9:7 [2d ed 5A West’s NY Prac Series] [“the judge alone determines the specimen’s authenticity, subject to the jury’s right to reject the judge’s finding of genuineness”]; CJI2d[NY] Instructions of General Applicability — Role of Court and Jury).
As is the usual case, the defendant is free to challenge the reliability of the evidence, and suggest other inferences. and interpretations of the People’s proof. A defendant may submit evidence on rebuttal that the photo is unreliable, for example, with proof from the person who altered the photo, proof that the defendant disavowed the photo on the web page, or a copy of the original, unaltered photo. It is then for the jury to weigh the evidence and ultimately decide.
Chief Judge DiFiore and Judges Fahey and Wilson concur; Judge Rivera concurs in result in an opinion in which Judge Garcia concurs; Judge Feinman taking no part.
Order reversed and a new trial ordered.

. To avoid confusion with our prior case law on the authentication of photographs, and to more precisely describe that the evidence offered for admission here was a digitized rendition posted on a social media site, I refer to the proffered evidence as a “printout of a digital image” rather than as a “photograph” (majority op at 474).

. Contrary to the majority’s claim, when we decide an open question presented on appeal we do not act in haste (majority op at 479 n 3). Rather, we pronounce the law by which we reason an outcome. Given the pervasive use of social media, there is nothing premature about determining how law enforcement and prosecutors may use evidence obtained online (see David I. Schoen, The Authentication of Social Media Postings, ABA Trial Evidence Committee [May 17, 2011]).

. In some contexts we may resolve a matter by “[ajssuming, without deciding” a legal fact or applicable standard (see e.g. Matter of East Ramapo Cent. Sch. Dist. v King, 29 NY3d 938, 939-940 [2017]; People v Fisher, 28 NY3d 717, 725 [2017]; People v Augustine, 21 NY3d 949, 951 [2013]; People v Cornelius, 20 NY3d 1089, 1091 [2013]; Quilloin v Walcott, 434 US 246, 256 [1978]; Smith v Spisak, 558 US 139, 156 [2010]). That approach is appropriate where the Court assumes a threshold fact necessary to the resolution of the issue on appeal or decides between two or more well-established rules (see Stop the Beach, 560 US at 718). It is one thing to hold that, for example, assuming there was error, it was harmless, but it is quite another to assume a test applies, and hold that it has not been satisfied. In the former case, what the Court assumes is, in actuality, immaterial to the outcome, but in the latter case — as illustrated by defendant’s appeal — what the court assumes is precisely necessary to resolving the issue presented.

. Given the lack of adequate evidence connecting defendant to the web page, the Court has no occasion to address the sufficiency of the victim’s identification of the gun. Nevertheless, the majority concludes the People failed to authenticate the printout, in part, because the victim “could not identify the gun in the photograph as the one held by the robber” (majority op at 475). Yet, only in unusual circumstances will a victim be able to testify with confidence that the proffered evidence matches exactly the weapon used during the commission of the crime. More likely, a victim will be able to testify only that the evidence looked “like” the weapon used, as the victim did here. Notably, the Appellate Division has decided that this type of testimony is enough to permit admission (People v Gonzalez, 88 AD3d 480, 480 [1st Dept 2011] [evidence of defendant’s possession of a knife that “resembled the knife used in the robbery” one week after the robbery was “clearly relevant”]; People v Rivera, 281 AD2d 702, 703 [3d Dept 2001] [“evidence of defendant’s prior and subsequent possession of a firearm resembling the one used in the present crimes was admissible for the purpose of identifying defendant as the perpetrator”]; People v Brown, 266 AD2d 863, 863 [4th Dept 1999] [evidence that defendant possessed a handgun similar to the gun used in the crime four days before “was admissible to establish defendant’s identity”]; People v Jackson, 237 AD2d 620, 620 [2d Dept 1997] [“trial court properly admitted into evidence testimony that five days after the crime, the defendant possessed a weapon resembling the weapon used in the crime” as proof of defendant’s identity]). As this Court has stated, “certainty [is] not necessary” to establish admissibility (People v Dunbar Contr. Co., 215 NY 416, 423 [1915]). While the majority observes that in some of these, the courts held that the evidence was “relevant,” and did not refer to “authentication” (majority op at 477 n 2), the testimony would only be relevant if the weapon were the same as the weapon used during the commission of the crime because in *486 those cases the prior possession was admitted to show identity just as in defendant’s case. These courts certainly must have determined a weapon to be the same as that used during the crime based on testimony that the weapon was “similar.” In any event, whether the gun was properly identified by the victim in this appeal is rendered academic because the People did not connect defendant to the web page. Prudence requires we leave the issue until properly presented in another case.