People v Harris (2021 NY Slip Op 06331)





People v Harris


2021 NY Slip Op 06331


Decided on November 16, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 16, 2021

Before: Manzanet-Daniels, J.P., Kapnick, Mazzarelli, Moulton, Scarpulla, JJ. 


Ind. No. 3862/14 Appeal No. 14605 Case No. 2018-3711 

[*1]The People of the State of New York, Respondent,
v
Jeffrey Harris, Defendant-Appellant.


Caprice R. Jenerson, Office of the Appellate Defender, New York (David Bernstein of counsel), and Covington & Burling LLP, New York (Shailee Sharma of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Emily A. Aldridge of counsel), for respondent.



Judgment, Supreme Court, Bronx County (Ethan Greenberg, J.), rendered October 28, 2016, convicting defendant, after a jury trial, of attempted murder in the second degree, and sentencing him, as a second felony offender, to a term of 15 years, unanimously affirmed.
The verdict was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348 [2007]). Moreover, the evidence of defendant's guilt was overwhelming, notwithstanding that neither the victim nor any eyewitnesses testified. In addition to statements made by defendant to the police and on a recorded phone call, the key piece of evidence was a surveillance videotape showing defendant's continuous actions before and during his shooting of the victim. Although defendant's face is no longer visible at the moment of the shooting, his very distinctive clothing is still visible. Because it is undisputed that defendant is the person depicted up until the shooting, there is no merit to his assertion that the video shows an "unidentifiable gunman" committing the crime. There is no reasonable possibility that the victim was not shot by defendant, but by a different person wearing the identical combination of distinctive clothing items who somehow appeared on the scene.
Although defendant requested a charge on circumstantial evidence, he did not preserve any of his arguments in support of such a charge, and we decline to review them in the interest of justice. In any event, the court correctly declined to give the jury the charge, because the case did not rest exclusively on circumstantial evidence. The above-described surveillance video provided direct evidence of defendant's guilt (see People v Hardy, 26 NY3d 245, 249-251 [2015]).
The court providently exercised its discretion in admitting the surveillance videotape. The video was sufficiently authenticated through the testimony of an employee of the Housing Authority's Closed Circuit Television Division, who testified, among other things, that he had checked the system and observed that it was in proper working order, including on the day of the shooting, before he retrieved the footage and saved a copy of it onto a DVD without making any alterations, deletions, or changes (see People v Patterson, 93 NY2d 80, 84 [1999]; People v Wilson, 186 AD3d 1166, 1166 [1st Dept 2020], lv denied 36 NY3d 1054 [2021]; People v Cabrera, 137 AD3d 707, 708 [1st Dept 2016], lv denied 27 NY3d 1129 [2016]). The witness's testimony that the system had been in good working order three days before he checked it was not speculation, but was based on his expertise and the condition of the video footage itself, which raises no doubt about whether the system was functioning normally. Defendant has not shown that maintenance records would be necessary to establish the same facts. Finally, any inconsistent testimony regarding when the police picked up the footage does nothing to call into question the accuracy of the video.
The court properly denied defendant's [*2]motion to suppress his statement to the police. Shortly after the crime, defendant was himself a victim of a shooting in Elmira, where he was hospitalized. He was arrested in Elmira and transported to the Bronx by officers from the warrant squad. Although the detective who questioned defendant upon his return testified about defendant's waiver of his Miranda rights and the absence of any coercive circumstances, defendant argues that the People were also required to show the absence of coercive circumstances between the arrest in Elmira and the interrogation. Contrary to defendant's argument, the People were not required to call the transporting officers because defendant "presented no bona fide factual predicate which demonstrated that such officers possessed material evidence on the question of whether the statements were the product overtly or inherently of coercive methods" (People v Witherspoon, 66 NY2d 973, 974 [1985]). Defendant never claimed, in his omnibus motion papers or otherwise, that he had been subjected to coercive influences before the interview in the Bronx, in which he waived his Miranda rights and gave the statement at issue. Moreover, the detective who interviewed defendant gave explicit testimony that warrant squad officers are not authorized to question arrestees or involve themselves in investigations (see People v Dunlap, 216 AD2d 215, 217 [1st Dept 1995]). The hearing evidence also negated any possibility that defendant was under the influence of his injuries or any medications at the time of his statement.
The court properly denied defendant's request for a hearing to determine the legality of his arrest (see Dunaway v New York, 442 US 200 [1979]). At the time of his motion, defendant had been apprised, by way of the felony complaint and voluntary disclosure form, that his arrest had been based on an accusation and photo identification by the victim, who was acquainted with defendant. In view of such specific information about the predicate for his arrest, his bare-boned allegations that he was engaged in lawful behavior at all times and that his arrest was unsupported by probable cause are insufficient to raise any factual issue to warrant a hearing (see People v Mendoza, 82 NY2d 415, 430-432 [1993]), and his claim that he lacked the necessary information to make a more detailed motion is unavailing (see People v Scott, 172 AD3d 543, 543-544 [1st Dept 2019], lv denied 34 NY3d 954 [2019]).
Defendant did not preserve his challenge to the court's compromise Sandoval ruling, which the court deemed more favorable to defendant than the compromise suggested by the People, and we decline to review it in the interest of justice. As an alternative holding, we find that the court's ruling was a provident exercise of discretion.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 16, 2021