People v Jackson (2024 NY Slip Op 01395)

People v Jackson

2024 NY Slip Op 01395

Decided on March 15, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 15, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., BANNISTER, GREENWOOD, AND KEANE, JJ.

58 KA 21-01616

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
EDDIE JACKSON, DEFENDANT-APPELLANT. 

LAW OFFICE OF VERONICA REED, SCHENECTADY (VERONICA REED OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (BRADLEY W. OASTLER OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Onondaga County Court (Thomas J. Miller, J.), rendered January 21, 2021. The judgment convicted defendant, upon a jury verdict, of attempted murder in the second degree and criminal possession of a weapon in the second degree (three counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]) and three counts of criminal possession of a weapon in the second degree (§ 265.03 [1] [b]; [3]). We affirm.
Defendant contends that County Court erred in admitting in evidence surveillance video footage and recordings of phone and video calls made while defendant was incarcerated (recorded jail calls) inasmuch as that evidence lacked a proper foundation. We reject that contention. With respect to the surveillance footage, "[t]he decision to admit or exclude videotape evidence generally rests, to be sure, within a trial court's founded discretion" (People v Patterson, 93 NY2d 80, 84 [1999]). "Similar to a photograph, a videotape may be authenticated by the testimony of a witness to the recorded events or of an operator or installer or maintainer of the equipment that the videotape accurately represents the subject matter depicted" (id.). Here, although the evidentiary foundation established at the time the surveillance footage was entered into evidence was weak, any deficiency in that foundation was later remedied by the testimony of witnesses who confirmed the accuracy of the events depicted in the video (see People v Cardoza, 218 AD3d 1291, 1293 [4th Dept 2023], lv denied 40 NY3d 996 [2023]).
With respect to the recorded jail calls, we conclude that the People established a sufficient foundation for their admission in evidence (see People v Harlow, 195 AD3d 1505, 1508 [4th Dept 2021], lv denied 37 NY3d 1027 [2021]; see generally People v Ely, 68 NY2d 520, 527-528 [1986]; People v Sostre, 172 AD3d 1623, 1625 [3d Dept 2019], lv denied 34 NY3d 938 [2019]). Defendant's identity on the recordings was established through the content of the recordings and the testimony of a police detective familiar with defendant's voice, and the testimony of individuals in charge of maintaining the jail's recording systems established that the recordings were " 'complete and accurate reproduction[s] of the conversation[s] and [had] not been altered' " (Harlow, 195 AD3d at 1508).
Even assuming, arguendo, that neither the surveillance footage nor the recorded jail calls were sufficiently authenticated and that the court thus erred in admitting them in evidence, we conclude that "the admission of such evidence was harmless as the evidence of . . . defendant's guilt was overwhelming, and there was no significant probability that the [alleged] error contributed to . . . defendant's conviction[ ]" (People v Upson, 186 AD3d 1270, 1271 [2d Dept 2020], lv denied 36 NY3d 1054 [2021]; see Cardoza, 218 AD3d at 1293; see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]).
We reject defendant's further contention that he was denied his right to confront one of the witnesses against him when the court received in evidence that witness's prior written statement. A defendant may not assert their constitutional right of confrontation to prevent the admission of a witness's out-of-court declarations when " 'it has been shown that the defendant procured the witness's unavailability through violence, threats or chicanery' " (People v Smart, 23 NY3d 213, 220 [2014]; see People v Vernon, 136 AD3d 1276, 1278 [4th Dept 2016], lv denied 27 NY3d 1076 [2016]).
At a Sirois hearing, the People introduced several recordings of phone calls made while defendant was incarcerated in which defendant first threatened the witness, who was his former girlfriend, and later entreated her not to testify and offered her a place to "lay low" until the trial was over. The People also introduced recordings in which defendant instructed a third party to text the witness and tell her not to cooperate and provided details on where the witness could stay and who would cover the witness's costs while she was hiding. We conclude that the court properly determined that the People established by the requisite clear and convincing evidence that the witness was unavailable to testify due to defendant's misconduct (see People v Geraci, 85 NY2d 359, 370 [1995]; People v Bernazard, 188 AD3d 1239, 1242 [2d Dept 2020], lv denied 36 NY3d 1095 [2021]; People v Miller, 61 AD3d 1429, 1429 [4th Dept 2009], lv denied 12 NY3d 927 [2009]).
Contrary to defendant's final contentions, we conclude that the conviction is supported by legally sufficient evidence with respect to each count (see generally People v Bleakley, 69 NY2d 490, 495 [1987]) and that the verdict, viewed in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
Entered: March 15, 2024
Ann Dillon Flynn
Clerk of the Court