Matter of Gabriel H. (2024 NY Slip Op 03588)

Matter of Gabriel H.

2024 NY Slip Op 03588

Decided on July 3, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 3, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, OGDEN, GREENWOOD, AND KEANE, JJ.

187 CAF 23-01211

[*1]IN THE MATTER OF GABRIEL H. ERIE COUNTY DEPARTMENT OF SOCIAL SERVICES, PETITIONER-RESPONDENT; DANIEL K., RESPONDENT-APPELLANT. (APPEAL NO. 1.)

NICHOLAS T. TEXIDO, WEST SENECA, FOR RESPONDENT-APPELLANT.
BENJAMIN MANNION, BUFFALO, FOR PETITIONER-RESPONDENT.
DAVID J. PAJAK, ALDEN, ATTORNEY FOR THE CHILD.

Appeal from an order of the Family Court, Erie County (Sharon M. LoVallo, J.), entered December 15, 2022, in a proceeding pursuant to Family Court Act article 10. The order, inter alia, determined that respondent derivatively abused the subject child. 
It is hereby ORDERED that the order so appealed from is affirmed without costs.
Memorandum: In these proceedings pursuant to Family Court Act article 10, respondent appeals in appeal No. 2 from an order of fact-finding and disposition that, inter alia, determined that he abused the daughter of his girlfriend (mother) and, in appeal No. 1, he appeals from an order of fact-finding and disposition that, inter alia, determined that he derivatively abused the mother's son. The evidence against respondent at the fact-finding hearing consisted chiefly of videos depicting him sexually abusing the daughter in the living room of a house, and respondent contends with respect to both appeals that Family Court improperly admitted those videos in evidence. Although we disagree with petitioner that respondent failed to preserve that contention for our review, we nevertheless reject respondent's contention.
The videos were discovered by the Federal Bureau of Investigation (FBI) during an unrelated investigation in late January 2022 into the trading of child pornography. The FBI executed a search warrant upon a person (suspect) who was a subject of their investigation. The suspect admitted to an FBI special agent that he had been hacking into security web cameras and that, in 2019, he had hacked into a security camera where he observed what he believed was an adult male sexually abusing a teenage girl. The FBI obtained from the suspect's computer three videos and details of the security camera login information, including an email address. Through the FBI's investigative work, together with the assistance of the New York State Police, it was determined that the videos came from a camera in a house where respondent resided with the mother and the children who are the subject of these proceedings. The FBI agent explained how he copied the videos from the suspect's computer onto a DVD, and he testified that the videos on the DVD that was admitted in evidence at the fact-finding hearing were true and accurate copies of the videos he viewed on the suspect's computer. He testified that he did not make any observations that led him to believe that the video footage had been tampered with or altered in any way. The videos were date-stamped from May, June, and July 2019. A detective with the State Police testified that he showed screenshots of the videos to the mother, who identified the female in one image as her daughter and the male in another as respondent, her live-in boyfriend. Upon entering the mother's residence, the detective observed cameras in the house, including in the living room, and he testified that the living room and its furnishings matched what was shown in the videos.
Respondent contends that petitioner failed to authenticate the videos through the [*2]testimony of a person who witnessed the events, the maker of the videos, or someone with sufficient knowledge of the surveillance system to show that it accurately recorded the events. Respondent further contends that petitioner failed to establish that the videos were not fabricated by the suspect. It is well settled that the admissibility of video evidence rests within the sound discretion of the trial court so long as a sufficient foundation for its admissibility has been proffered (see People v Patterson, 93 NY2d 80, 84 [1999]). "[A]uthenticity is established by proof that the offered evidence is genuine and that there has been no tampering with it" (People v McGee, 49 NY2d 48, 59 [1979], cert denied 446 US 942 [1980]; see People v Price, 29 NY3d 472, 476 [2017]). A video "may be authenticated by the testimony of a witness to the recorded events or of an operator or installer or maintainer of the equipment that the video[ ] accurately represents the subject matter depicted" (Patterson, 93 NY2d at 84). It may also be authenticated, however, by "[t]estimony, expert or otherwise . . . [to] establish that a video[ ] 'truly and accurately represents what was before the camera' " (id.). "[T]he foundation necessary to establish [authenticity] may differ according to the nature of the evidence sought to be admitted" (People v Goldman, 35 NY3d 582, 595 [2020] [internal quotation marks omitted]).
We agree with the court that the videos were sufficiently authenticated and that "any alleged uncertainty went to the weight to be accorded the evidence rather than its admissibility" (People v Houston, 181 AD3d 477, 478 [1st Dept 2020], lv denied 35 NY3d 1027 [2020] [internal quotation marks omitted]). The testimony of the special agent and detective authenticated the videos through circumstantial evidence of their "appearance, contents, substance, internal patterns, and other distinctive characteristics" (People v Franzese, 154 AD3d 706, 707 [2d Dept 2017], lv denied 30 NY3d 1105 [2018]; see Guide to NY Evid rule 9.05 [6], Methods of Authentication and Identification; see also People v Jordan, 181 AD3d 1248, 1249-1250 [4th Dept 2020], lv denied 35 NY3d 1067 [2020]; see generally Goldman, 35 NY3d at 595-596). The testimony at the hearing established that the videos depicted a living room of the home where the mother, her children, and respondent lived. The detective testified that the mother identified her daughter and respondent in screenshots taken from the videos; that he observed cameras in the house, including in the living room; and that he observed that the living room and its furnishings matched what was shown in the videos. In other words, there were "distinctive identifying characteristics" in the videos themselves (Goldman, 35 NY3d at 595). There was also the "significant fact" that respondent "did not dispute that he was the individual who appeared in the video[s]" (id.). In addition, the special agent testified that he primarily investigated child pornography and performed digital forensic work, and he saw no signs of alteration or tampering with the videos. We therefore conclude that petitioner established that the videos "accurately represent[ed] the subject matter depicted" (id. [internal quotation marks omitted]), and we conclude that the court acted within its "founded discretion" (Patterson, 93 NY2d at 84) in admitting them in evidence.
Contrary to respondent's further contention in appeal No. 2, there is a sound and substantial basis in the record supporting the court's determination that he abused the daughter (see Matter of Skyler D. [Joseph D.], 185 AD3d 1515, 1516 [4th Dept 2020]; see generally Matter of Philip M., 82 NY2d 238, 243-244 [1993]). Respondent does not dispute that the acts shown on the videos constitute sex offenses (see Family Ct Act § 1012 [e] [iii]), but he contends that the videos should be given little to no weight because they could be "deepfakes." The court afforded the videos great weight based on clear evidence of their reliability, including that the room depicted in the videos was the same room that was shown on photographs taken by the police when they searched the home where respondent, the mother, and her children lived. As the court noted, the same couch, afghan, end table, and lamp were all visible in the videos and photographs. Other items the police recovered from the home were also seen in the videos. In addition, respondent, the mother, and the children were all easily identifiable in the videos, and we agree with the court's determination that the "actions, dialog, and behavior shown in the videos show no indication of any tampering." There were no visible cuts or edits, or jumps in the time stamps on the videos.
We reject respondent's further contention in appeal No. 1 that the finding of derivative abuse with respect to the son is not supported by a preponderance of the evidence (see Skyler D., 185 AD3d at 1517). The abuse of the daughter occurred in the living room of the house, which is easily accessible to anyone in the house. The son was depicted in one video just 15 minutes before respondent abused the daughter. We conclude that the court properly determined that the son is an abused child "inasmuch as the abuse of [the daughter] 'is so closely connected with the [*3]care of [the son] as to indicate that [the son] is equally at risk' " (Matter of Alyssa C.M., 17 AD3d 1023, 1024 [4th Dept 2005], lv denied 5 NY3d 706 [2005]; see Matter of Markeith G. [Deon W.], 152 AD3d 424, 425 [1st Dept 2017]; see generally Matter of Marino S., 100 NY2d 361, 374 [2003], cert denied 540 US 1059 [2003]).
Respondent's contention in appeal No. 2 regarding the order of protection issued against him in favor of the daughter is moot inasmuch as that order has been vacated. Respondent's further contention in appeal No. 1 that the court erred in including a certain provision with respect to the order of protection issued against him in favor of the son is not preserved for our review (see Matter of Ariel C.W.-H. [Christine W.], 89 AD3d 1438, 1438 [4th Dept 2011]). We decline to address that contention in the interest of justice (see id.).
We have considered respondent's remaining contentions and conclude that they do not require modification or reversal of the orders.
All concur except Curran and Ogden, JJ., who dissent and vote to reverse in accordance with the following memorandum: We respectfully dissent and would reverse the orders and dismiss the petitions at the center of these two appeals because we conclude, contrary to the majority, that Family Court erred in admitting in evidence home surveillance videos depicting respondent sexually abusing the daughter of his girlfriend (mother). The videos formed the primary basis for the determinations that respondent abused the daughter and derivatively abused the mother's son. A joint fact-finding hearing was held with respect to the petitions against respondent and the mother, who herself was ultimately found—based on the same essential evidence—to have abused the daughter and derivatively abused the son because she knew or should have known about respondent's sexual abuse but did nothing to stop it. The mother separately appealed from the orders of fact-finding and disposition determining that she abused the daughter and derivatively abused the son, and this Court affirmed the orders in those appeals (Matter of Mekayla S. [Melanie H.] [appeal No. 1], — AD3d &mdash, — [July 3, 2024] [4th Dept 2024]; Matter of Gabriel H. [Melanie H.] [appeal No. 2], — AD3d &mdash, — [July 3, 2024] [4th Dept 2024] [decided herewith]).
Here, in concluding that the court erred in admitting in evidence the videos with respect to respondent's appeals, we agree with and adopt the rationale contained in the dissent of Presiding Justice Whalen in the mother's appeals concluding that, during the joint fact-finding hearing, petitioner did not sufficiently authenticate the videos inasmuch as there was no testimony, expert or otherwise establishing that the videos truly and accurately represented what was before the camera (see Mekayla S., — AD3d at — [Whalen, P.J., dissenting]; see People v Patterson, 93 NY2d 80, 84 [1999]; Torres v Hickman, 162 AD3d 821, 823 [2d Dept 2018]). That rationale applies with equal force here, in respondent's appeals, inasmuch as the abuse and derivative abuse determinations with respect to both the mother's appeals and respondent's appeals were based on identical evidence. Specifically, as noted in the dissent in the mother's appeals, petitioner did not offer any testimony from any person who witnessed the events depicted in the videos or who had controlled or maintained the system that recorded the videos. Instead, petitioner relied largely on the testimony of an agent of the Federal Bureau of Investigation (FBI) who—more than two years after the videos were recorded—transferred the videos from the computer of an individual who was a subject of an FBI investigation (suspect). The suspect had obtained the videos by hacking into a security camera at the house respondent shared with the mother and the subject children. We agree with the dissent in the mother's appeals that the FBI agent's testimony was insufficient, by itself, to authenticate the videos because he did not have any personal knowledge of the creation of the videos or how they were obtained by the suspect, nor did his testimony establish how his experience "perform[ing] digital forensic work" might have "trained him to identify alterations to [the] videos" or provide any basis for his belief that the videos had not been edited or altered (Mekayla S., — AD3d at — [Whalen, P.J., dissenting]).
In light of our conclusion that petitioner did not provide a sufficient legal foundation (see Patterson, 93 NY2d at 85), we conclude that the videos should not have been admitted in evidence. Without the videos, there is no evidence to sustain the petitions and, consequently, we would reverse the order in each appeal and dismiss the petitions.
Entered: July 3, 2024
Ann Dillon Flynn
Clerk of the Court