■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES FIORINO, Appellant. [15 NYS3d 498]—

Egan Jr., J. Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered July 2, 2014, upon a verdict convicting defendant of the crime of assault in the second degree.

During the early morning hours of June 27, 2013, the victim

was attacked and robbed as she was walking home from a party on South Pearl Street in the City of Albany. After the victim, who was choked during the attack, regained consciousness, she took a taxi home and, later that morning, reported the incident to the Albany Police Department. The police successfully tracked the victim's cell phone, which was stolen during the robbery, and arrested a suspect, whom the victim later identified as her attacker.

While the victim was at the police station completing a report of the incident, she received a telephone call from defendant, her father. According to a patrol officer who witnessed this conversation, defendant sounded "very upset" and could be heard "yelling" at the victim. The victim explained that her phone had been stolen and that she was at the police station, in response to which defendant said, "[W]ell, you know what's going to happen when you get home."

Thereafter, on July 2, 2013, the victim appeared in Albany City Court for a preliminary hearing on the underlying robbery, at which time the Assistant District Attorney prosecuting that matter noted that the victim had, among other things, two black eyes. William VanAmburgh, a detective with the Albany Police Department, advised the Assistant District Attorney that the victim did not display such injuries at the time that she reported the robbery; upon further inquiry, the victim informed VanAmburgh that, following her return from the police station on the afternoon of June 27, 2013, she and defendant engaged in a physical altercation, during the course of which defendant repeatedly punched and kicked her, in addition to striking her with a wooden walking cane. Photographs of the victim taken following this altercation revealed two badly blackened eyes, as well as multiple bruises and abrasions to the victim's face, arms, shoulders, legs and back.

VanAmburgh telephoned defendant and advised that he wished to speak with defendant "about a fight he had with [the victim]." Defendant agreed to come down to the police station and, once there, VanAmburgh advised defendant of his *Miranda* rights. Defendant thereafter gave a written statement wherein he expressed his belief that the victim was "doing things that [he] didn't know about, having unknown friends, having sex, having a boyfriend etc." and indicated how, on the afternoon in question, he confronted the victim and asked her to "lay it all out for [him]." The victim indicated that "there was nothing" to tell, but defendant did not believe her—apparently because a fortune teller had told him that the victim "was having a lot of sex and also taking a lot of pills." Having

previously found condoms in the victim's purse, defendant took this as "confirmation that the fortune teller was telling [him] the truth," and he started "to get upset." As the verbal altercation between defendant and the victim intensified, the victim attempted to leave the residence, at which point defendant "grabbed her right arm and pulled her back into the house and told her that she was not going anywhere." At this point, "punches started to go back and forth," and defendant admitted that he "threw [the victim] to the ground and grabbed a stick and hit her a little bit." Defendant also acknowledged that he "kicked [the victim] a little when she was on the ground"; once he noticed bruises developing on the victim's face, defendant "snap[ped] out of [his] anger spell" and allowed the victim to leave.

Defendant thereafter was indicted and charged with one count of assault in the second degree. Following an unsuccessful motion to suppress defendant's written statement, the matter proceeded to trial, where both the victim and defendant appeared and testified. Although defendant attempted to minimize his conduct, claiming that he never struck the victim with a closed fist, insisting that she only sustained "little blows" and asserting that he merely "tapped her" with the cane, defendant nonetheless admitted to engaging in a physical altercation with the victim, and both his written statement and a redacted video recording of his oral statement were admitted into evidence. The jury convicted defendant as charged, and County Court subsequently sentenced defendant to three years in prison followed by three years of postrelease supervision. This appeal by defendant ensued.

Defendant initially contends that County Court erred in failing to suppress his oral and written statements. We disagree. As a starting point, we find no merit to defendant's claim that he invoked his right to counsel. In this regard, VanAmburgh testified at the suppression hearing that, when he first spoke with defendant on the phone about coming down to the police station, defendant "asked if he should bring an attorney with him"; VanAmburgh told defendant that "[it] was up to him, that it was his decision." On cross-examination, VanAmburgh was asked whether the issue of counsel came up during the course of his interview with defendant; in response, VanAmburgh testified that, after defendant executed his written statement and was placed under arrest, defendant said something to the effect of "I . . . asked you if I should bring an attorney with me," whereupon VanAmburgh reminded defendant, "I said, that's up to you. That's your decision."

To be sure, "[o]nce an uncharged individual requests counsel while in police custody, his or her constitutional rights cannot thereafter be waived without counsel present" (*People v Strong*, 27 AD3d 1010, 1012 [2006], *lv denied* 7 NY3d 763 [2006]; *see People v Cade*, 110 AD3d 1238, 1240 [2013], *lv denied* 22 NY3d 1155 [2014]; *People v Engelhardt*, 94 AD3d 1238, 1239-1240 [2012], *lv denied* 19 NY3d 960 [2012]). Whether a defendant is in custody presents "a mixed question of law and fact, which is dependent on the circumstances existing when the challenged statements were made" (*People v Henry*, 114 AD3d 1025, 1026 [2014], *lv dismissed* 22 NY3d 1199 [2014] [citation omitted]). Additionally, in order for a defendant to invoke his or her right to counsel, there must be an "unequivocal assertion" of that right (*People v Engelhardt*, 94 AD3d at 1241; *see People v Glover*, 87 NY2d 838, 839 [1995]; *People v Higgins*, 124 AD3d 929, 931 [2015]; *People v Phoenix*, 115 AD3d 1058, 1059 [2014], *lv denied* 23 NY3d 1024 [2014]).

Here, defendant plainly was not in custody at the point in time when he initially spoke with VanAmburgh on the phone (prior to actually coming to the police station) and, even assuming—without deciding—that defendant indeed was in custody upon his arrival at the police station, the record fails to reflect that defendant thereafter unequivocally asserted his right to counsel. Merely inquiring as to whether he should bring (or should have brought) an attorney with him to the police station did not, under the particular facts of this case, constitute an unequivocal assertion of defendant's right to counsel (*see People v Barski*, 66 AD3d 1381, 1382 [2009], *lv denied* 13 NY3d 905 [2009]; *compare People v Jemmott*, 116 AD3d 1244, 1246-1247 [2014]), and defendant points to no other statement made by him that could reasonably be interpreted as an unequivocal assertion of his rights in this regard. Accordingly, inasmuch as defendant's statements were not obtained in violation of his right to counsel, County Court properly denied defendant's motion to suppress upon this ground.

Defendant's related claim—that his oral and written statements should be suppressed because he did not voluntarily waive his *Miranda* rights—is equally unavailing. Defendant was orally advised of his *Miranda* rights prior to any questioning; defendant nodded his head affirmatively throughout VanAmburgh's recitation of those rights, answered "Yes" when asked if he understood his rights and thereafter willingly discussed and answered questions regarding the altercation with the victim, thereby "impliedly waiv[ing] his rights" (*People v Dobbins*, 123 AD3d 1140, 1140 [2014], *lv denied* 25 NY3d

1071 [2015]; *see People v Sirno*, 76 NY2d 967, 968 [1990]; *People v Jaeger*, 96 AD3d 1172, 1173 [2012], *lv denied* 19 NY3d 997 [2012]; *People v Coleman*, 57 AD3d 1519, 1519 [2008], *lv denied* 12 NY3d 782 [2009]). After defendant's statement was reduced to writing, defendant was provided with written *Miranda* warnings, which he reviewed and initialed prior to reading aloud, correcting and signing his written statement. Under these circumstances, and upon reviewing the video-recorded interview of defendant, we are satisfied that defendant understood and voluntarily waived his *Miranda* rights (*see People v Desmond*, 118 AD3d 1131, 1134 n 1 [2014], *lv denied* 24 NY3d 1002 [2014]). Therefore, defendant's motion to suppress his oral and written statements upon this ground was properly denied.

Defendant next contends that he was deprived of a fair trial by virtue of prosecutorial misconduct—specifically, that during the course of the People's summation, the prosecutor misstated the evidence, impermissibly vouched for the victim's credibility and disparaged defendant. The record reflects, however, that defendant's arguments regarding the challenged statements "are unpreserved for our review, as no objections were raised before County Court" (*People v Head*, 90 AD3d 1157, 1158 [2011]; *see People v Richards*, 124 AD3d 1146, 1147 [2015], *lv denied* 25 NY3d 992 [2015]). Further, "the record as a whole fails to disclose that the prosecutor engaged in a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive defendant of a fair trial" (*People v Green*, 119 AD3d 23, 30 [2014], *lv denied* 23 NY3d 1062 [2014] [internal quotation marks, brackets and citations omitted]; *see People v Morrison*, 127 AD3d 1341, 1343-1344 [2015]; *People v Fomby*, 101 AD3d 1355, 1357 [2012]). Accordingly, reversal of defendant's conviction upon this ground is not warranted.*

Finally, we find no merit to defendant's claim that he was denied the effective assistance of counsel. Defendant's argument on this point is two fold: first, that defense counsel elicited damaging testimony from the victim regarding prior physical altercations with defendant and, further, that defense counsel essentially conceded defendant's guilt during the course of his summation. The case law makes clear that "[t]he constitutional

---

* That said, we nonetheless address a comment made at oral argument of this matter, wherein counsel for the People defended one of the challenged statements—made during the course of the People's summation—by characterizing the statement as "effective." No comment made by a prosecutor during summation—if otherwise improper—could ever be excused under the guise of its effectiveness in contributing to a conviction.

right to the effective assistance of counsel does not mean that the representation was error free in every respect, but simply that defendant was afforded a fair trial" (*People v Fulwood*, 86 AD3d 809, 811 [2011], *lv denied* 17 NY3d 952 [2011] [internal quotation marks and citations omitted]; *accord People v Cade*, 110 AD3d at 1241; *People v Bjork*, 105 AD3d 1258, 1263 [2013], *lv denied* 21 NY3d 1040 [2013], *cert denied* 571 US —, 134 S Ct 1306 [2014]). As a result, "isolated errors in counsel's representation generally will not rise to the level of ineffectiveness, unless the error is so serious that defendant did not receive a fair trial" (*People v Shuaib*, 111 AD3d 1055, 1057 [2013], *lv denied* 24 NY3d 1046 [2014] [internal quotation marks, brackets and citations omitted]; *see People v Brabham*, 126 AD3d 1040, 1043 [2015], *lv denied* 25 NY3d 1160, 1171 [June 15, 2015]). "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (*People v Robinson*, 123 AD3d 1224, 1227-1228 [2014], *lv denied* 25 NY3d 992 [2015] [internal quotation marks and citations omitted]). Notably, "[w]hen reviewing a claim of ineffective assistance of counsel, courts must avoid confusing actual ineffectiveness with mere losing tactics, and a defendant must demonstrate the absence of strategic or reasonable explanations for counsel's alleged shortcomings" (*People v Griffin*, 122 AD3d 1068, 1070 [2014], *lv denied* 25 NY3d 1164 [June 9, 2015] [internal quotation marks and citation omitted]).

Here, the record reflects that defense counsel engaged in relevant motion practice, articulated appropriate and effective evidentiary objections, thoroughly cross-examined the People's witnesses, advanced a cohesive and cogent defense and otherwise vigorously represented defendant's interests. As to the cited errors, the crux of the defense strategy was that defendant was the concerned father of a deceitful young adult, who, in his view, was engaged in questionable activities; thus, the argument continues, when confronted with the victim's most recent act of dishonesty, defendant experienced an uncharacteristic loss of temper and engaged in an unprecedented physical altercation that he deeply regretted. To that end, defense counsel asked the victim on cross-examination whether, before the underlying incident, defendant had ever struck her, to which the victim replied, "Yes." Additional questioning ensued, during the course of which the victim testified that defendant hit her "like three to four times a month."

Although defendant now ascribes error to this line of

questioning, he has failed to demonstrate the absence of a strategic or tactical explanation for counsel's actions. Notably, the victim's credibility was a central issue at the trial and, during the course of the People's case-in-chief, the nurse who treated the victim in a local emergency room following the assault testified that the victim disavowed any history of domestic abuse, denied that anyone was hitting or hurting her and expressed no concerns about her safety at home. Hence, by posing the challenged question and eliciting an affirmative response from the victim, defense counsel cast doubt upon the victim's credibility by highlighting the inconsistencies between her testimony at trial and her prior statements to medical personnel. Likewise, had defense counsel succeeded in obtaining a negative response to the question, such testimony would have been entirely consistent with defendant's position that the underlying altercation was an aberrational event.

We reach a similar conclusion regarding defense counsel's summation, wherein he stated, "And contrary to what [the victim] might have you believe, [defendant] never brutalized her up until this single once-in-forever event." As a starting point, counsel's statement has to be viewed in context of the summation as a whole, during the course of which counsel repeatedly pointed to alleged inconsistencies in the victim's testimony in an effort to portray her as a dishonest, disrespectful and ungrateful young woman who—on this one occasion— had pushed her father to his absolute limit. More to the point, counsel's comment must be gauged against the proof actually adduced at trial. In this regard, although defendant indeed attempted to minimize the force with which he struck the victim and suggested that some of her facial injuries may have been sustained when the victim tripped and fell upon leaving the residence following the altercation, he never denied that he "smack[ed] [the victim's] face," "kicked her a couple times in the legs" and "tapped her" with the wooden cane. Additionally, both defendant's written statement and the video-recorded interview of defendant, wherein he readily admitted that he engaged in a physical altercation with the victim, were admitted into evidence. In short, while defendant endeavored to downplay the severity of the altercation, insisted that he did not intend to hurt the victim and expressed regret for his behavior, he never denied that the altercation actually occurred, and counsel's statement, although perhaps inartfully expressed, supported the overall defense strategy—namely, that this was an isolated incident that was entirely inconsistent with defendant's character and demeanor and for which he was truly sorry. Under these circumstances, counsel's com-

ment—even if erroneous—was not sufficiently egregious to deprive defendant of a fair trial (particularly given that counsel contested the intent element of the underlying crime), and we are satisfied that, overall, defendant received meaningful representation. Defendant's remaining assertions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

McCarthy, J.P., Devine and Clark, JJ., concur. Ordered that the judgment is affirmed.

