People v Williams (2020 NY Slip Op 02289)





People v Williams


2020 NY Slip Op 02289


Decided on April 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 16, 2020

108529 110947

[*1]The People of the State of New York, Respondent,
v
Jarquell Williams, Also Known as Six Seven, Appellant.

Calendar Date: February 19, 2020

Before: Garry, P.J., Clark, Devine, Pritzker and Colangelo, JJ.


Theresa M. Suozzi, Saratoga Springs, for appellant.
P. David Soares, District Attorney, Albany (Christopher D. Horn of counsel), for respondent.



Devine, J.
Appeals (1) from a judgment of the Supreme Court (Breslin, J.), rendered November 20, 2015 in Albany County, upon a verdict convicting defendant of the crimes of murder in the second degree and criminal possession of a weapon in the second degree, and (2) by permission, from an order of said court, entered February 28, 2019 in Albany County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
In the mid-morning hours of October 16, 2014, the victim fired a handgun at several men standing outside of a health clinic in the City of Albany. One of the men responded by pulling out a gun, pursuing the victim and shooting him in the head as he biked away. The wound proved fatal. Onlookers described the man who shot the victim as a very tall black man with braided hair wearing a distinctive garment, described by some as a Buffalo Bulls sweatshirt and by another as a baseball jacket, and added that he had fled toward a nearby apartment building. A responding officer recognized defendant from the eyewitness descriptions of the shooter and asked for a check of defendant's GPS ankle bracelet, worn as a condition of parole, which confirmed that defendant was in the area at the time of the shooting and was still in the apartment building. Police officers surrounded the building, learned that defendant was holed up in the apartment of one of his acquaintances and eventually flushed him out with tear gas. Defendant was not armed or wearing the clothing described by witnesses to the shooting when he was taken into custody, but investigators found the clothing in the apartment and an operable .38-caliber revolver secreted outside the building.
Defendant was charged in an indictment with murder in the second degree and criminal possession of a weapon in the second degree. He then made an unsuccessful motion to, in relevant part, suppress statements that he made to investigators after his arrest and the clothing recovered from the apartment. The matter proceeded to a jury trial after which defendant was convicted as charged. Supreme Court sentenced defendant, a second felony offender, to a prison term of 25 years to life upon the murder conviction and a concurrent prison term of 15 years, to be followed by five years of postrelease supervision, upon the weapon possession conviction. Defendant appeals from the judgment of conviction and, by permission, from the denial of his postjudgment motion to vacate it.
To begin, the trial evidence supported the verdict in all respects. Multiple eyewitnesses saw part or all of what occurred and described to police the man who pursued and shot the victim. A responding officer thought that the descriptions fit defendant, who he knew, and a location check of defendant's GPS ankle bracelet confirmed that defendant was outside the clinic at the time of the shooting and was still in the apartment building where witnesses had seen the shooter flee. Surveillance video obtained from nearby businesses also showed defendant — wearing a Buffalo Bulls sweatshirt with a Yankees baseball cap prominently displayed in its hood — hanging out in the area with the acquaintance whose apartment he later fled to and appearing to pursue the victim just before the fatal shot. Investigators recovered defendant's sweatshirt, baseball cap and other personal items from the apartment after his apprehension, and further found a loaded handgun with three expended rounds outside of the building. The recovered handgun was operable and could have been the murder weapon, and DNA evidence pointing to defendant, as well as material consistent with gunshot residue, were found on the sweatshirt.
Defendant's trial motion to dismiss was arguably detailed enough to preserve his legal sufficiency argument for our review, but that argument fails inasmuch as the foregoing proof, when viewed in the light most favorable to the People, provided "a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime[s] proved beyond a reasonable doubt" (People v Steinberg, 79 NY2d 673, 682 [1992]; see Penal Law §§ 125.25 [1]; 265.03 [3]; People v Rashid, 166 AD3d 1382, 1383 [2018], lv denied 32 NY3d 1208 [2019]; People v Malloy, 166 AD3d 1302, 1305-1306 [2018], affd 33 NY3d 1078 [2019]). Further, assuming without deciding that a different verdict was a reasonable possibility, our independent review of the conflicting testimony and the various inferences that could be drawn from it leaves us satisfied that the verdict rendered by the jury is supported by the weight of the evidence (see People v Danielson, 9 NY3d 342, 348 [2007]; People v Slocum, 178 AD3d 1131, 1134 [2019]; People v Malloy, 166 AD3d at 1305-1306).
Turning to the various suppression issues raised by defendant, we agree with Supreme Court that he did not articulate "a legitimate expectation of privacy" in either his acquaintance's apartment or in the outdoor area where the handgun was recovered that would afford him standing to contest the search and seizure of items from those areas (People v Wilkinson, 166 AD3d 1396, 1399 [2018], lv denied 32 NY3d 1179 [2019]; see People v Ponder, 54 NY2d 160, 166 [1981]; People v Jones, 155 AD3d 1103, 1105 [2017], lv denied 30 NY3d 1106 [2018]). As for his efforts to suppress statements made to investigators, he claimed that he was questioned in violation of his right to counsel. Contrary to his present contention, the existence of a parole violation warrant against him at the time of his questioning did not equate to "the commencement of a criminal proceeding to which the indelible right to counsel attaches" (People v Baxter, 140 AD3d 1180, 1181 [2016], lv denied 29 NY3d 946 [2017]; accord People v Anthony, 152 AD3d 1048, 1052 [2017], lvs denied 30 NY3d 978, 981 [2017]). The issue is instead whether defendant, who was indisputably in custody at the time of questioning, invoked his right to counsel by unequivocally requesting a lawyer (see People v Glover, 87 NY2d 838, 839 [1995]; People v Engelhardt, 94 AD3d 1238, 1239-1240 [2012], lv denied 19 NY3d 960 [2012]).
In that regard, the hearing testimony and a video of the interrogation revealed that defendant was brought to the police station after his apprehension and advised of his Miranda rights, which he orally acknowledged and implicitly waived (see People v Green, 141 AD3d 1036, 1038 [2016], lv denied 28 NY3d 1072 [2016]; People v Fiorino, 130 AD3d 1376, 1379-1380 [2015], lv denied 26 NY3d 1087 [2015]). He pondered whether he wanted his "family" or "a lawyer" present but, when asked to clarify, said that he would like to talk to his family and did not unequivocally assert his right to counsel (see People v Fuschino, 59 NY2d 91, 100 [1983]; People v Fiorino, 130 AD3d at 1379; People v Higgins, 124 AD3d 929, 931 [2015]). It was accordingly proper for Supreme Court to determine that defendant's ensuing statements were admissible up until his later unequivocal request for a lawyer. Investigators ceased questioning defendant about his activities at that point, but defendant went on to make unsolicited statements about the morning's events when asked whether he wanted a particular lawyer, statements that Supreme Court appropriately concluded "were 'not the result of inducement, provocation, encouragement or acquiescence'" and were also admissible (People v Higgins, 124 AD3d at 932, quoting People v Maerling, 46 NY2d 289, 302-303 [1978]).
Defendant's remaining contentions upon his direct appeal are unavailing. Supreme Court properly permitted testimony to establish that defendant was on parole for an unspecified offense, information that was needed to explain why defendant was wearing the ankle bracelet used to trace his whereabouts and was the subject of an appropriate limiting instruction to the jury (see People v Walker, 80 AD3d 793, 794-795 [2011]; People v Lownes, 40 AD3d 1269, 1270 [2007], lv denied 9 NY3d 878 [2007]). Finally, in view of the nature of the offenses committed and defendant's prior criminal history, the sentences imposed by Supreme Court are not harsh or excessive.
As for defendant's appeal from the denial of his CPL 440.10 motion, we do not agree that he presented newly discovered proof constituting "clear and convincing evidence of factual innocence, not mere legal insufficiency of evidence of guilt" (People v Mosley, 155 AD3d 1124, 1125 [2017] [internal quotation marks and citation omitted], lv denied 31 NY3d 985 [2018]; see CPL 440.10 [1] [h]; People v Fraser, 165 AD3d 697, 699 [2018], lv denied 32 NY3d 1171 [2019]; People v Hamilton, 115 AD3d 12, 23 [2014]). Defendant produced the affidavit from a person who went outside after the shooting and saw a man other than defendant running into the apartment building, proof that neither addressed the fact that defendant was also in the building nor established that the other man shot the victim. A second set of statements came from the acquaintance whose apartment he retreated to after the shooting — a man who had first identified defendant as the shooter before refusing to testify when called by the People at trial — indicating that his initial account was incorrect and that he did not see defendant possess a gun or use it to shoot the victim.[FN1] The acquaintance's recantation of his prior story is an "extremely unreliable form of evidence" (People v Tucker, 40 AD3d 1213, 1214 [2007], lv denied 9 NY3d 882 [2007]; accord People v Larock, 139 AD3d 1241, 1245 [2016], lv denied 28 NY3d 932 [2016]), and whatever doubt it cast upon the extensive proof of defendant's guilt was inadequate "to support a motion to vacate a judgment based on actual innocence" (People v Mosley, 155 AD3d at 1126). Therefore, Supreme Court properly refused to vacate defendant's conviction pursuant to CPL 440.10 (1) (h). Supreme Court was also correct in concluding that this evidence — to the extent that it was newly discovered evidence that could not, with due diligence, have been produced at trial — merely "impeach[ed] or contradict[ed]" the trial evidence and would not have probably changed the verdict so as to warrant setting aside the judgment pursuant to CPL 440.10 (1) (g) (People v Sides, 242 AD2d 750, 751 [1997], lv denied 91 NY2d 836 [1997]; see People v Shaw, 174 AD3d 1036, 1038-1039 [2019], lv dismissed 34 NY3d 1081 [2019]; People v Sharpe, 70 AD3d 1184, 1186 [2010], lv denied 14 NY3d 892 [2010]).
Finally, defendant contends that trial counsel rendered ineffective assistance in various respects, a contention that requires defendant to come forward with "proof of less than meaningful representation, rather than simple disagreement with strategies and tactics" (People v Rivera, 71 NY2d 705, 708-709 [1988]; see People v Stetin, 167 AD3d 1245, 1249 [2018], lv denied 32 NY3d 1178 [2019]).[FN2] Although defendant complains that two individuals were not called as defense witnesses, he fails to articulate how that damaged his case since both were called by the People and subject to cross-examination. Defense counsel also failed to call the acquaintance to testify, but there were sound reasons to avoid doing so given that the acquaintance had already attempted to invoke his right against self-incrimination (see People v Thomas, 51 NY2d 466, 472-473 [1980]; People v Jones, 176 AD3d 1397, 1399 [2019]). There is no indication that defendant's mental issues affected his "ability to participate at trial or his eventual sentencing, and defendant does not show that counsel's failure to more vigorously pursue those issues lacked a legitimate reason or constituted ineffective assistance" (People v Thomas, 169 AD3d 1255, 1258 [2019] [internal quotation marks and citations omitted], lvs denied 33 NY3d 1033, 1036 [2019]). In short, notwithstanding the dark portrait painted by defendant from those and other allegations, the record as a whole reflects that counsel put forth a vigorous defense so as to afford defendant meaningful representation (see People v Santana, 179 AD3d 1299, 1299-1300 [2020]; People v Flower, 173 AD3d 1449, 1457 [2019], lv denied 34 NY3d 931 [2019]; People v Shuaib, 111 AD3d 1055, 1057-1058 [2013], lv denied 24 NY3d 1046 [2014]).
Garry, P.J., Clark, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment and order are affirmed.



Footnotes

Footnote 1: Defendant suggested, "[u]pon information and belief," that the People committed a Brady violation by failing to disclose the acquaintance's recantation prior to trial. Defendant provided nothing to substantiate his speculation that the People knew about the recantation; to the contrary, the People's ignorance of the recantation was effectively confirmed by the fact that they sought to call the acquaintance as their witness at trial and were flummoxed when he refused to testify and sought to "plead the [Fifth]." There is no Brady violation where the exculpatory information was "unknown to [the People] and not within their possession" (People v Hayes, 17 NY3d 46, 52 [2011]; see People v Stacconi, 151 AD3d 1395, 1397 [2017]).

Footnote 2: Inasmuch as defendant asserted a claim of ineffective assistance in his CPL article 440 motion and bases the claim upon "matters appearing both in the record on direct appeal and outside of the record," we address the claim in the context of his appeal from the denial of that motion (People v Thacker, 173 AD3d 1360, 1361 n 2 [2019], lv denied 34 NY3d 938 [2019]).