People v Kilgore (2023 NY Slip Op 03953)

People v Kilgore

2023 NY Slip Op 03953

Decided on July 27, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 27, 2023

112978 112979
[*1]The People of the State of New York, Respondent,
v
Steven M. Kilgore, Appellant.

Calendar Date:May 31, 2023

Before:Garry, P.J., Clark, Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Stephen J. Carney, Schenectady, for appellant, and appellant pro se.
Michael A. Korchak, District Attorney, Binghamton (Geoffrey B. Rossi of counsel), for respondent.

Ceresia, J.
Appeals (1) from a judgment of the County Court of Broome County (Joseph F. Cawley, J.), rendered June 29, 2021, upon a verdict convicting defendant of the crime of grand larceny in the fourth degree, and (2) from a judgment of said court, rendered June 29, 2021, convicting defendant upon his plea of guilty of the crime of grand larceny in the third degree.
Defendant was charged in a single-count indictment (hereinafter the first indictment) with grand larceny in the fourth degree, stemming from allegations that, on January 14, 2020, he stole merchandise from a Walmart store in the Village of Johnson City, Broome County. Defendant was also charged in another single-count indictment (hereinafter the second indictment) with grand larceny in the third degree for allegedly stealing a vehicle in the City of Binghamton, Broome County on January 15, 2020. With respect to the first indictment, defendant proceeded to a jury trial and was ultimately convicted as charged. Following that trial, defendant pleaded guilty to the charge set forth in the second indictment. County Court thereafter sentenced him, as a second felony offender, to prison terms of 2 to 4 years relative to the first indictment and 3½ to 7 years in connection with the second indictment, with the two sentences ordered to run consecutively. Defendant appeals from both judgments.
Regarding the first indictment, defendant claims that the jury verdict is not supported by legally sufficient evidence and is against the weight of the evidence. Defendant's legal sufficiency challenge is preserved only to the extent that he argues that the People failed to establish that the subject items had actually been stolen. "Nevertheless, a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crime[ ]" (People v Doane, 212 AD3d 875, 876 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 39 NY3d 1154 [2023]). "[W]hen undertaking a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Sweet, 200 AD3d 1315, 1316 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lv denied 38 NY3d 930 [2022]). As is relevant here, "[a] person is guilty of grand larceny in the fourth degree when he [or she] steals property and when . . . [t]he value of the property exceeds [$1,000]" (Penal Law § 155.30 [1]).
At trial, the People produced testimony from the store's assistant manager for asset protection, a state trooper and a detective. The assistant manager testified that he was working in the store on January 14, 2020, when he was [*2]alerted by another employee that the emergency door in the store's garden center was ajar, with the alarm sounding. The garden center of the store was described as an area beyond the store's points of sale, with an emergency door leading to a side parking lot. Upon review of security footage from several cameras throughout the store, the assistant manager was able to track the movements of an individual as he pushed a cart through the store, placing several items into it, including two desktop computers, two televisions and multiple routers. The footage, which was received in evidence, depicted this individual walking to the garden center, exiting with the shopping cart through the emergency exit, loading the items into a pickup truck and driving away. This footage did not show defendant paying for the items at any point of sale. Of the items that could be clearly identified from the video, the assistant manager calculated their total value to be $1,204, and further determined that there had been no sales on the date in question of any of the particular items that were identified as stolen.
The trooper testified that he pulled over a pickup truck for speeding late in the evening on January 14, 2020. Upon discovering that defendant, the driver, did not have a valid driver's license and there was an active warrant for his arrest, the trooper took defendant into custody and impounded the truck. The trooper's inventory of the truck's contents revealed a television, two computers and two routers, among other items.
The detective testified that he became involved in the investigation of the larceny on January 15, 2020. After he was provided with the store's surveillance videos, he ran the license plate of the pickup truck in question and determined that it had been pulled over and impounded by a state trooper. The detective contacted the trooper and was given defendant's name as the individual who had been driving the truck at the time that it was stopped. The detective obtained a mug shot of defendant, which was introduced into evidence.
Defendant, for his part, called a private investigator to testify. The investigator gave brief testimony concerning the make and model of the computers that could be seen in the shopping cart as depicted in the security footage.
A different verdict would not necessarily have been unreasonable had the jury concluded that the People failed to establish defendant's identity beyond a reasonable doubt. However, viewing the evidence in a neutral light and deferring to the jury's credibility assessments, we are satisfied that the verdict is supported by the weight of the evidence (see People v Cade, 203 AD3d 1221, 1224 [3d Dept 2022]; People v Helms, 119 AD3d 1153,1154-1155 [3d Dept 2014], lv denied 24 NY3d 1044 [2014]).
Next, defendant contends that County Court erred in denying him a Wade hearing in connection with the detective's use of the surveillance videos and defendant's mug shot to identify him. We disagree[*3]. "[T]he purpose of a Wade hearing is to test identification testimony for taint arising from official suggestion during 'police-arranged confrontations between a defendant and an eyewitness' " (People v Dixon, 85 NY2d 218, 222 [1995], quoting People v Gissendanner, 48 NY2d 543, 552 [1979]; see People v Beliard, 101 AD3d 1236, 1238 [3d Dept 2012], lv denied 20 NY3d 1096 [2013]). Defendant was not entitled to a Wade hearing, as the detective, who was not a witness to the crime, did not make any pretrial identification of defendant, let alone one pursuant to a police-arranged identification procedure (see People v Hightower, 104 AD3d 510, 510 [1st Dept 2013], lv denied 21 NY3d 1004 [2013]; People v Toledo, 270 AD2d 805, 805 [4th Dept 2000], lv denied 95 NY2d 858 [2000]). Rather, the detective merely used investigatory means in an attempt to determine the identity of the person depicted in the surveillance footage.[FN1]
As for defendant's claim that County Court erred in denying his request to charge petit larceny as a lesser included offense, such an assertion lacks merit. There is no reasonable view of the evidence that defendant stole merchandise worth less than $1,000 (see People v Cooper, 196 AD3d 855, 859-860 [3d Dept 2021], lv denied 37 NY3d 1160 [2022]; People v Lawrence, 277 AD2d 501, 502 [3d Dept 2000]).
Turning to the second indictment, defendant argues that his plea was not knowing, intelligent and voluntary because he was unaware until the time of sentencing that County Court would refuse to order his sentences to run concurrently with undischarged sentences previously imposed by other courts. Although defendant preserved this claim by making an unsuccessful motion to withdraw his plea on this ground (see People v Rodriguez, 206 AD3d 1383, 1384 [3d Dept 2022]), we nevertheless find it to be unavailing. The sentences imposed herein were required by law to run consecutively with respect to any sentences imposed before the instant offenses were committed (see Penal Law § 70.25 [2-a]), and defendant "was never given any reason to think that part or all of the sentence[s] imposed would be effectively nullified, by running simultaneously with [a] sentence he had already received" (People v Lagas, 76 AD3d 384, 387 [3d Dept 2010] [internal quotation marks, brackets and citation omitted], lv denied 16 NY3d 744 [2011]; see People v Boyer, 91 AD3d 1183, 1184 [3d Dept 2012], affd 22 NY3d 15 [2013]).
Defendant also claims that he felt coerced to plead guilty because he was facing the possibility of persistent felony offender status if convicted after trial. Defendant, however, failed to preserve this argument by seeking to withdraw his plea on this basis (see People v Laurange, 215 AD3d 1169, 1170 [3d Dept 2023]). In any event, we reject this contention, as the pressure to which defendant was purportedly subjected was no different than "the type of situational coercion faced by many defendants who are [considering whether to plead guilty]" (People [*4]v Graham, 214 AD3d 1256, 1257 [3d Dept 2023] [internal quotation marks and citations omitted]; see also People v Rivera, 290 AD2d 730, 731 [3d Dept 2002]; People v Batts, 179 AD2d 937, 937-938 [3d Dept 1992]).
Finally, defendant asserts that based upon his age, willingness to participate in substance abuse treatment, desire to change his behavior in the future and acceptance of responsibility for the crimes committed, the sentences imposed were harsh and excessive. We are not persuaded. Acknowledging defendant's extensive criminal history dating back to 1978 — comprising 35 convictions, including 12 felonies — as well as the fact that defendant did not actually take full responsibility for his conduct, asserting during his presentence interview that he was innocent of the crime for which the jury convicted him, we discern no basis upon which to modify the sentence imposed (see People v Diaz, 213 AD3d 979, 984 [3d Dept 2023], lv denied ___ NY3d ___ [June 30, 2023]; People v Curry, 210 AD3d 1203, 1205 [3d Dept 2022]). Defendant's remaining contentions regarding both the first indictment and the second indictment have been examined and determined to be without merit.
Garry, P.J., Clark, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgments are affirmed.

Footnotes

Footnote 1: Although the detective was asked at trial whether he recognized anyone in the video, and responded by identifying defendant, County Court sustained defendant's objection to that question and answer. As a result, recognizing that the detective ultimately offered no identification testimony at trial, defendant's Wade argument has also been rendered moot (see People v Lowry, 203 AD3d 1670, 1671 [4th Dept 2022], lv denied 38 NY3d 1034 [2022]).