People v Karnes (2024 NY Slip Op 00340)

People v Karnes

2024 NY Slip Op 00340

Decided on January 25, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 25, 2024

112614
[*1]The People of the State of New York, Respondent,
v
Damien M. Karnes, Appellant.

Calendar Date:December 14, 2023

Before:Egan Jr., J.P., Pritzker, Ceresia, Fisher and Powers, JJ.

Cambareri & Brenneck, Syracuse (Melissa K. Swartz of counsel), for appellant.
Kristy L. Sprague, District Attorney, Elizabethtown (Kevin P. Mallery of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the County Court of Essex County (Richard B. Meyer, J.), rendered October 30, 2019, upon a verdict convicting defendant of the crimes of rape in the first degree, unlawful imprisonment in the second degree and sexual abuse in the first degree.
Defendant was charged by indictment with rape in the first degree, two counts of criminal sexual act in the first degree, unlawful imprisonment in the second degree, criminal obstruction of breathing or blood circulation and sexual abuse in the first degree, stemming from the March 2018 rape of the victim that occurred while the victim was at a resort in the Village of Lake Placid, Essex County for a work event. After a jury trial,[FN1] defendant was convicted of rape in the first degree, unlawful imprisonment in the second degree and sexual abuse in the first degree, and acquitted of the other charges. Defendant was sentenced to a prison term of 18 years to be followed by 20 years of postrelease supervision on the rape conviction and a consecutive prison term of six years to be followed by 15 years of postrelease supervision on the sexual abuse conviction; he was sentenced to a fine on the remaining conviction. Defendant appeals.
Initially, defendant's assertion that the counts of the indictment charging him with rape in the first degree and sexual abuse in the first degree were rendered duplicitous by testimony adduced at trial is unpreserved for appellate review (see People v Starnes, 206 AD3d 1133, 1144 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]; People v Williams, 150 AD3d 1315, 1317 [3d Dept 2017], lv denied 30 NY3d 984 [2017]; People v Dunton, 30 AD3d 828, 829 [3d Dept 2006], lv denied 7 NY3d 847 [2006]). We decline defendant's invitation to reach this argument in the interest of justice (see CPL 470.15 [6] [a]).
Defendant next contends that the verdict is against the weight of the evidence because of internal inconsistencies in the victim's testimony and because the victim's lack of injuries undermines her version of events. As relevant here, "[a] person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [b]y forcible compulsion" (Penal Law § 130.35 [1]), and "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [b]y forcible compulsion" (Penal Law § 130.65 [1]). "Within the context of sex offenses, forcible compulsion means to compel by either use of physical force; or a threat, express or implied, which places the victim in fear of immediate death or physical injury" (People v Starnes, 206 AD3d at 1135-1136 [internal quotation marks, brackets and citations omitted]). Additionally, "[a] person is guilty of unlawful imprisonment in the second degree when he [or she] restrains another person" (Penal Law § 135.05).
The victim testified that she was in Lake Placid for a work event where she met defendant, who was attending the same event as a guest of [*2]the victim's company. After the victim and defendant spoke to each other for a few hours, the victim went with defendant to his hotel room. The pair began kissing and, at one point, defendant attempted to put his hand down the victim's pants and she told him no, she did not want to have sexual intercourse. Defendant indicated that was fine, but then attempted to again put his hand down the victim's pants. She stated again that she did not want to have sexual intercourse and explained that she was menstruating. The victim testified that, at that point, defendant became angry. The victim explained that, after this, defendant pulled off her pants and underwear and pulled her into the bathroom where he pushed her into the shower, turned on the water and closed the door behind her. Defendant then told the victim she needed to "clean [herself]." When she didn't, defendant got into the shower and began lathering her lower body. The victim testified that defendant put his fingers inside of her vagina, which caused her to scream in pain. She testified that she told defendant that she had a tampon in and he claimed to have removed it. The victim then testified to multiple acts of sexual conduct which occurred, including defendant putting her penis inside her vagina. While this was occurring, defendant was holding the victim against the shower wall by her wrists, which were above her head. The victim also testified that defendant licked between her thigh and buttocks area.
Soon after, defendant pulled the victim out of the shower, wrapped towels around her and then, tightly wrapping his arms around her from behind, pushed her toward the bed. Defendant then shoved the victim onto the bed, face down, and pushed her face into pillows. The victim testified that she was crying and screaming "stop, don't, stop, don't." Defendant told the victim to "shut up [and] stop crying" and that he was "going to give [her] the best sex [she] ever had." Once on the bed, defendant continued to assault the victim, at one point flipping her onto her back and, while holding her down, penetrated her vagina with his penis. Defendant then grabbed the victim's ankles and slid her to the bottom of the bed, at which point he got down onto his knees and began to lick the victim's thighs and bite her upper thighs and butt cheeks. Photographs were admitted at trial that depicted bruises on the victim's buttocks, which the victim testified were from defendant having bit her.[FN2] After again having vaginal intercourse with the victim, defendant stated he was "too drunk for this" and began to fall asleep. The victim tried to "wiggle" her way out from underneath defendant, but he woke up and continued the assault for a short period of time before falling asleep again. After this pattern occurred again, the victim waited until defendant started to snore and she was able to slide off the bed, grab her clothes and return to her hotel room.
The next afternoon, defendant texted the victim stating, "[*3]I [don't] remember what happened last night once we left the bar so I'm going to apologize just in case. I'm not like that." The victim testified that, after feeling slightly ill for the next two days, she discovered a tampon that had been lodged inside of her body since the assault. She removed it and provided it to law enforcement. A forensic scientist from the New York State Police Forensic Investigation Center testified that she tested swabs that had been collected from the victim's tampon, which revealed DNA matching that of defendant. Similarly, a cutting from the victim's underwear that was tested also revealed DNA, of which defendant was a major contributor.[FN3] Given the foregoing, although a different verdict would not have been unreasonable had the jury found the victim's testimony to be incredible, "viewing the record in a neutral light and giving deference to the jury's credibility determinations, we find that the verdict was not against the weight of the evidence" (People v Watson, 174 AD3d 1138, 1140 [3d Dept 2019], lv denied 34 NY3d 955 [2019]; see People v Hackett, 167 AD3d 1090, 1093 [3d Dept 2018]). As to defendant's assertion that the victim lacked credibility, "the testimony was not inherently unbelievable or incredible as a matter of law and was fully explored on cross-examination, [thus] we accord due deference to the jury's credibility determinations" (People v Sweet, 200 AD3d 1315, 1318-1319 [3d Dept 2021], lv denied 38 NY3d 930 [2022]; see People v Velett, 205 AD3d 1143, 1145 [3d Dept 2022], lv denied 39 NY3d 988 [2022]).
Defendant also contends that he was deprived of a fair trial due to prosecutorial misconduct based upon certain questions and comments by the prosecutor. First, when responding to the question "[w]hat happened next," the victim, in the course of her answer, stated that defendant said he had "just gotten out of prison." Defendant objected, and County Court sustained the objection and told the jury to disregard completely that portion of the testimony. Outside the presence of the jury, defendant moved for a mistrial, which motion the court denied. The court did, however, caution the People to specifically instruct their witnesses, including the victim, not to testify to anything relating to defendant's prior conviction. No such testimony occurred again. Given the court's prompt instruction to disregard the testimony and cautioning of the People to ensure similar testimony was not elicited again, any prejudice to defendant was ameliorated (see People v Hadlock, 218 AD3d 925, 930 [3d Dept 2023], lv denied 40 NY3d 997 [2023]; People v Nadal, 131 AD3d 729, 731 [3d Dept 2015], lv denied 26 NY3d 1041 [2015]). Defendant cites to other comments by the prosecutor during summation; however, given that contemporaneous objections were not made to many of these remarks, his challenge to same is unpreserved (see People v Hilton, 185 AD3d 1147, 1150 [3d Dept 2020], lv denied 35 NY3d 1095 [2020]; People v Drayton, 183 AD3d [*4]1008, 302 [3d Dept 2020], lv denied 35 NY3d 1065 [2020]). To the extent any of these challenges are preserved, "these remarks were either fair comment on the evidence or responsive to defense counsel's summation" (People v Hilton, 185 AD3d at 1150).
Finally, given the seriousness of the crime, defendant's lengthy criminal history and his failure to accept responsibility, we do not discern any basis upon which to modify the sentence imposed (see CPL 470.15 [6] [b]; People v Bridges, 220 AD3d 1107, 1113 [3d Dept 2023]; People v Kilgore, 218 AD3d 1054, 1058 [3d Dept 2023], lv denied ___ NY3d ___ [Dec. 18, 2023]). We have reviewed defendant's remaining contentions and find them to be without merit.
Egan Jr., J.P., Ceresia, Fisher and Powers, JJ., concur.
ORDERED that the judgement is affirmed.

Footnotes

Footnote 1: This was defendant's second trial; the first resulted in a mistrial.

Footnote 2: These photographs were taken three days later by a sexual assault nurse examiner.

Footnote 3: The forensic scientist explained that "a major contributor to a mixture is the person that is contributing more DNA than any other contributors in the profile."