People v Zeoli

2026 NY Slip Op 02171

April 9, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,

v

Zack Zeoli, Appellant.

Decided and Entered:April 9, 2026

CR-24-0241

Calendar Date: February 19, 2026

Before: Garry, P.J., Clark, Pritzker, Mcshan And Corcoran, JJ.

Steven Sharp Law, PLLC, Albany (Steven M. Sharp of counsel), for appellant.

Mary Pat Donnelly, District Attorney, Troy (Melissa K. Swartz, Syracuse, of counsel), for respondent.

[*1]

McShan, J.

Appeal from a judgment of the County Court of Rensselaer County (Debra Young, J.), rendered October 19, 2023, upon a verdict convicting defendant of the crimes of attempted murder in the second degree and criminal possession of a weapon in the second degree.

In December 2022, defendant was charged by indictment with the crimes of attempted murder in the second degree and criminal possession of a weapon in the second degree stemming from an August 2022 shooting in the City of Troy, Rensselaer County. Following a jury trial, defendant was convicted as charged and was sentenced to a prison term of 25 years, to be followed by five years of postrelease supervision, for the attempted murder conviction and a concurrent prison term of 15 years, to be followed by five years of postrelease supervision, for the criminal possession of a weapon conviction.FN1 Defendant appeals.

Defendant assails the legal sufficiency of his conviction on two separate grounds. First, defendant contends that the evidence adduced at trial is legally insufficient to prove his identity as the perpetrator. "Defendant preserved [that specific] claim of legal insufficiency when County Court reserved upon [his] motion to dismiss presented at the close of the People's case and ultimately denied the motion at the close of defendant's case" (People v Munise, 222 AD3d 1183, 1184 [3d Dept 2023]; see People v Payne, 3 NY3d 266, 273 [2004]). "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Dillon, 231 AD3d 1352, 1353 [3d Dept 2024] [internal quotation marks and citations omitted]; accord People v White, 231 AD3d 1429, 1429 [3d Dept 2024], lv denied 42 NY3d 1082 [2025]). However, defendant's second contention that the People failed to establish his intent to kill beyond a reasonable doubt is unpreserved, as he did not raise that specific ground for dismissal as part of his motion (see People v Parker, 240 AD3d 66, 71 [3d Dept 2025], lv denied 43 NY3d 1047 [2025]; People v Gentry, 218 AD3d 919, 921 [3d Dept 2023], lv denied 40 NY3d 1012 [2023]). "Nevertheless, a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crimes to ensure that they were proven beyond a reasonable doubt" (People v Noble, 244 AD3d 1499, 1500 [3d Dept 2025] [internal quotation marks and citations omitted]; see People v Osman, 228 AD3d 1007, 1008 [3d Dept 2024]).

Relevant here, "[a] conviction for attempted murder in the second degree requires proof that, with intent to cause the death of another, the defendant engaged in conduct that tended to effect the commission of that crime" (People v Greenfield, 167 AD3d 1060, 1061 [3d Dept 2018], lv denied 32 NY3d 1204[*2][2019]; see Penal Law §§ 110.00, 125.25 [1]). Criminal possession of a weapon in the second degree occurs when an individual "possesses any loaded firearm" outside of their "home or place of business" (Penal Law § 265.03 [3]). "As an implicit but necessary element of each and every crime, the People must prove beyond a reasonable doubt the identity of the defendant as the person who committed the crime" (People v Alexander, 231 AD3d 1310, 1311 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]; accord People v Grady, 233 AD3d 1369, 1370-1371 [3d Dept 2024], lv denied 43 NY3d 963 [2025]).

At trial, the victim testified to his familiarity with defendant, having known him since childhood, noting that the mother of the victim's child was in a relationship with defendant at the time of the shooting. On the day of the incident, the victim was driving home from work when he saw defendant at the corner of an intersection he was approaching. The victim shouted at defendant from his vehicle and the two exchanged words, which prompted the victim to stop his vehicle shortly beyond the intersection. Defendant then approached the vehicle and, according to the victim, displayed a firearm that he pulled from his pocket. The victim then drove off and briefly stopped, before reversing closer to defendant as the two continued their exchange. As confirmed on video surveillance footage that was recovered by law enforcement from a nearby residence, defendant then ran toward the victim's vehicle, prompting the victim to drive away quickly. However, after defendant turned his back and began walking back toward the direction he came from, the victim's vehicle rapidly reversed and nearly struck defendant. Defendant then stepped to the front of the vehicle and discharged his weapon through the victim's windshield, striking the victim in the chest, neck and hand. The victim then drove himself to the hospital and, while there, he informed responding law enforcement that it was defendant who shot him.

A retired police sergeant, who was active at the time of the shooting, testified that he was familiar with defendant from the sergeant's service with the Troy Police Department. According to the sergeant, he reviewed the video surveillance footage while on scene and was able to ascertain that the shooter in the video was defendant. However, the sergeant acknowledged that, while on scene, he had also mistakenly identified a different individual, who had ridden a bicycle through the perimeter of the secured scene, as defendant. During defendant's case-in-chief, another responding police officer testified that, while at the scene, he watched video surveillance footage and mistakenly described the shooter to the sergeant as a Hispanic male wearing all black clothes with white lettering. That officer also testified that he spoke with witnesses on scene who indicated that the shooter was "possibly Hispanic."

"Based upon our review, we find that, when construing [*3]the evidence in the light most favorable to the People as we must, a rational person could conclude that the shooter's identity was sufficiently proven to be defendant" (People v Grady, 233 AD3d at 1371-1372 [internal quotation marks and citation omitted]; see People v Alexander, 231 AD3d at 1312; People v Peasley, 208 AD3d 1466, 1467 [3d Dept 2022], lv denied 39 NY3d 1074 [2023]). The victim clearly testified about his familiarity with defendant and, shortly after the shooting occurred, identified the defendant as the person who shot him. Additionally, the jury could infer, given the victim's wounds, that if defendant was the shooter, he knowingly possessed a loaded and operable firearm in violation of the law (see People v Grady, 233 AD3d at 1372; People v Lewis, 224 AD3d 1143, 1148-1149 [3d Dept 2024], lv denied 42 NY3d 939 [2024]; People v Nellis, 217 AD3d 1056, 1058 [3d Dept 2023]; People v Calafell, 211 AD3d 1114, 1117 [3d Dept 2022], lv denied 39 NY3d 1077 [2023]).

As to the weight of the evidence, a different verdict would not have been unreasonable had the jury rejected the victim's identification and ascribed greater weight to the prior misidentification by the sergeant and the erroneous description provided by defendant's witness when he responded on scene. Nevertheless, deferring to its credibility determinations, we find that the jury's conclusion that defendant was indeed the shooter and, by inference, possessed a loaded firearm, is not contrary to the weight of the evidence, as the jury could rely upon its own identification from the video evidence, the victim's identification and the victim's immediate report to law enforcement that defendant had shot him (see People v Grady, 233 AD3d at 1372; People v Calafell, 211 AD3d at 1117-1118; People v Williams, 182 AD3d 776, 778 [3d Dept 2020], lv denied 35 NY3d 1071 [2020]; People v Malloy, 166 AD3d 1302, 1307 [3d Dept 2018], affd 33 NY3d 1078 [2019]; see also People v Parker, 240 AD3d at 71). Further, the manner in which defendant discharged his firearm directly from the front of the victim's vehicle through the windshield provides sufficient grounds to support the requisite criminal intent (see People v Terry, 196 AD3d 840, 842 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]; People v Warner, 194 AD3d 1098, 1104 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]; People v Ward, 141 AD3d 853, 855 [3d Dept 2016], lv denied 33 NY3d 1074 [2019]).

Defendant next contends that the aforementioned surveillance footage and the stills generated from it were admitted without proper authentication. "In the authentication context, what matters most is whether the events depicted are as real as the proponent claims them to be" (Matter of M.S. [M.H.], ___ NY3d ___, ___, 2026 NY Slip Op 00825, *5 [2026]). "[A]uthenticity is established by proof that the offered evidence is genuine and that there has been no tampering with it, and the foundation necessary to establish these elements may differ according to the [*4]nature of the evidence sought to be admitted" (People v Jenne, 224 AD3d 953, 956 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 927 [2024]). "With respect to video evidence, . . . a video may be authenticated through (1) testimony of a witness to the recorded events or of an operator or installer or maintainer of the equipment that the videotape accurately represents the subject matter depicted or (2) testimony (expert or lay) establishing that the video truly and accurately represents what was before the camera" (Matter of M.S. [M.H.], ___ NY3d at ___, 2026 NY Slip Op 00825, *3 [internal quotation marks and citations omitted]; see People v Sumpter, 191 AD3d 1160, 1165 [3d Dept 2021], lv denied 37 NY3d 968 [2021]). "The decision to admit videotape evidence rests within the sound discretion of the trial court and will not be disturbed absent a lack of foundation for its introduction or a demonstrated abuse of the court's discretion" (People v Sanders, 185 AD3d 1280, 1283 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1115 [2020]; accord People v Lorenz, 211 AD3d 1109, 1111 [3d Dept 2022], lv denied 39 NY3d 1112 [2023]).

Defendant argues that County Court should not have admitted the video footage of the incident based upon the testimony of the detective who collected said footage. On that, defendant contends that the testimony from the detective, who recounted the manner in which he obtained the footage from a homeowner who maintained a surveillance system that captured the incident, was insufficient to independently establish the foundational requirements for admission (see Matter of M.S. [M.H.], ___ NY3d at ___, 2026 NY Slip Op 00825, *3-4 [2026]; People v Patterson, 93 NY2d 80, 84 [1999]; People v Ely, 68 NY2d 520, 527-528 [1986]). However, in this case, any foundational concerns in the detective's testimony immediately preceding the video being entered are not dispositive, as the record reflects that, on cross-examination, the victim was shown the surveillance footage previously entered into evidence and confirmed that it depicted the confrontation he had with defendant and the subsequent shooting (see People v Colon, 243 AD3d 1340, 1342 [4th Dept 2025], lv denied ___ NY3d ___ [Feb. 27, 2026]; see also People v Abrams, 231 AD3d at 964; Keene v Rosas, 215 AD3d 938, 939 [2d Dept 2023]; People v France, 120 AD3d 1357, 1357 [2d Dept 2014]). We are mindful that, generally, the appropriate time to establish the proper foundation for evidence is prior to its admission. Nevertheless, assuming without deciding that the detective's testimony fell short of establishing the requisite foundation on its own, "any deficiency in that foundation was later remedied by the testimony of [the victim] who confirmed the accuracy of the events depicted in the video" (People v Jackson, 225 AD3d 1136, 1137 [4th Dept 2024], lv denied 42 NY3d 927 [2024]; see People v Cardoza, 218 AD3d 1291, 1293 [4th [*5]Dept 2023], lv denied 40 NY3d 996 [2023]; see also People v Junior, 119 AD3d 1228, 1231 [3d Dept 2014], lv denied 24 NY3d 1044 [2014]; People v Boyd, 97 AD3d 898, 899 [3d Dept 2012], lv denied 20 NY3d 1009 [2013]). We therefore do not find that the admission of the surveillance footage and the corresponding stills into evidence constituted reversible error.

Turning to defendant's assertion that he was denied meaningful representation at trial, he first points to counsel's failure to challenge the sergeant's identification testimony.FN2 We find his contention unpersuasive. Notably, the video footage precipitating the sergeant's identification was not exceedingly clear and, more importantly, County Court provided an instruction shortly after the sergeant's identification that the jury could independently determine whether defendant was depicted in the video and otherwise reject the sergeant's testimony (see People v Cannon, 239 AD3d 986, 988 [2d Dept 2025], lv denied 44 NY3d 1027 [2025]; People v Lee, 200 AD3d 432, 433-434 [1st Dept 2021], lv denied 37 NY3d 1162 [2022]; see generally People v Williams, 234 AD3d 1180, 1184 [3d Dept 2025], lv denied 43 NY3d 966 [2025]). Moreover, although defense counsel could have objected when the sergeant provided his testimony identifying defendant as the shooter, he ultimately utilized such testimony by contrasting the sergeant's identification against the misidentification of both the sergeant and law enforcement generally, emphasizing that the investigation and focus on him as the shooter was the product of "tunnel vision." Considering defense counsel's strategy in its entirety, "we find no merit to defendant's argument that counsel's failure to object . . . constituted the type of singular error that requires reversal" (People v Bessette, 246 AD3d 1310, ___, 2026 NY Slip Op 01097, *5 [3d Dept 2026]; see People v Dunham, 231 AD3d 1437, 1439 [3d Dept 2024], lv denied 43 NY3d 963 [2025]).

Defendant also contends that counsel was ineffective for failing to pursue a justification defense. However, defendant acknowledges that doing so would have conflicted with the clear strategy employed by defense counsel of casting doubt on defendant's identity as the shooter. The challenge of presenting such competing defenses is evident when one looks to the facts of this case and considers the necessary showing to justify the use of deadly force; particularly, the subjective belief that such force was necessary under the circumstances presented (see People v Caselnova, 243 AD3d 1123, 1127 [3d Dept 2025]; People v Mercer, 221 AD3d 1259, 1261 [3d Dept 2023], lv denied 41 NY3d 1003 [2024]). Further, the video footage reflects that defendant willingly moved to the front of the vehicle in order to fire his weapon through the windshield, despite a clear opportunity to retreat in between the two cars adjacent to him, which is the exact path he ultimately took when he fled the scene (see People v Decamp, 211 AD3d 1121, 1122 [3d Dept 2022[*6]], lv denied 39 NY3d 1077 [2023]; People v Cutting, 206 AD3d 1281, 1281 [3d Dept 2022]). Accordingly, defendant's argument fails to demonstrate a complete lack of strategy in forgoing a justification defense (see People v Wilcox,231 AD3d 1350, 1351 [3d Dept 2024]; People v Burton, 215 AD3d 1054, 1062-1063 [3d Dept 2023], lv denied 40 NY3d 927 [2023]; People v Sposito, 193 AD3d 1236, 1241 [3d Dept 2021], affd 37 NY3d 1149 [2022]). Beyond the foregoing, the record provides no other indication that defendant received less than meaningful representation.

Finally, we decline defendant's request to modify his sentence in the interest of justice (see CPL 470.15 [6] [b]; see also People v Brisman, 43 NY3d 322, 325 [2025]). At the time of the shooting, defendant, who has an extensive criminal history, was awaiting sentencing on a June 2022 conviction for criminal possession of a forgery device and two counts of forgery in the first degree and had to be extradited from Ohio after failing to appear for his sentencing. Although the 25-year sentence is the maximum permissible term for his conviction for attempted murder, considering the foregoing alongside the information garnered from defendant's presentence interview, we are not persuaded that a reduction is warranted given the totality of circumstances (see People v George,242 AD3d 1447, 1453 [3d Dept 2025]; People v Kilgore, 218 AD3d 1054, 1058 [3d Dept 2023], lv denied 40 NY3d 1081 [2023]).

Garry, P.J., Clark, Pritzker and Corcoran, JJ., concur.

ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Although the sentences were directed to run concurrently to each other, they were directed to run consecutively to another sentence rendered the same day on a separate indictment.

Footnote 2: Acknowledging that this argument is unpreserved, we decline defendant's request to invoke our interest of justice jurisdiction and directly reach the issue beyond the context of his ineffective assistance of counsel argument.